**Milissa GARSIDE, et al., Plaintiffs,[1]**

v.

**OSCO DRUG, INC., et al., Defendants.**

**Civ. A. No. 88–974–T.**

United States District Court,
D. Massachusetts.

May 20, 1991.

---

**1.** Plaintiffs include Milissa Garside, by her next friend Maryanne Garside, and Maryanne Garside, individually.

Mary–Ellen Kennedy, Andrew C. Schultz, Field & Schultz, Boston, Mass., for plaintiffs.

David Geiger, Michael Keating, Foley, Hoag & Eliot, Boston, Mass., for Laroche, Inc.

Peter Knight, Morrison, Mahoney & Miller, Boston, Mass., for Beecham, Inc.

Douglas E. Hausler, John D. Hanify, Hanify & King, Boston, Mass., for defendants.

Joseph L. Doherty, Jr., Martin, Magnuson, McCarthy & Kenney, Boston, Mass., for Andrew J. Pryharski, M.D.

Scott D. Goldberg, Francis E. Sullivan, Murphy & Beane, Boston, Mass., for Osco Drug, Inc.

### MEMORANDUM

TAURO, District Judge.

## I

### Facts

On April 20, 1982, plaintiff Maryanne Garside brought her three-year-old daughter Milissa to Quincy Pediatric Associates ("QPA") for treatment of an earache. The QPA doctor concluded that Milissa had an ear infection and prescribed amoxicillin. On the way to the pharmacy to have the prescription filled, Milissa suffered a seizure. Her mother rushed her to Quincy City Hospital where she was treated with phenobarbital to control the seizures and amoxicillin for the ear infection. On April 23, 1982, Dr. Andrew Pryharski of QPA ordered Milissa's discharge from the hospital and wrote prescriptions for amoxicillin and phenobarbital. Milissa's mother then filled these prescriptions at defendant Osco Drug, Inc.'s ("Osco") pharamacy.

Milissa's condition worsened and she developed a severe rash. On May 2, 1982, she was admitted to Massachusetts General Hospital and spent two days in the burn unit. She was later transferred to the Shriner's Burn Institute ("Shriner's"). Doctors at Shriner's diagnosed Milissa as having toxic epidermal necrolysis ("TEN"), a condition which results from the poisoning of the skin tissue. TEN had a devastating effect on Milissa. She is now blind, suffers from severe hearing loss, and has scars covering the majority of her body.

## II

### Procedural History

On March 7, 1984, plaintiffs commenced this action in Suffolk County Superior Court against defendants Hoffman–LaRoche, Inc. ("HLR") and Beecham, Inc. ("Beecham"), the alleged manufacturers of the amoxicillin. Plaintiffs also named Osco as a defendant. On October 2, 1987, defendant Osco filed a third-party complaint against Dr. Pryharski.[2] On March 29, 1988, plaintiffs amended their complaint to add McKesson Corp. ("McKesson"), the alleged manufacturer of the phenobarbital, as a defendant. On April 28, 1988, McKesson removed the action to federal district court.

On January 31, 1989, this court granted defendants HLR and Beecham's motions for summary judgment (Counts I, II, III,

---

2. See Part IV infra.

IV, IX, X, XI, and XII), defendant McKesson's motion for summary judgment on Counts XIII and XIV, and defendant Osco's motion for summary judgment on Counts VII and VIII as to all claims involving amoxicillin and breach of warranty of fitness for a particular purpose. This court deferred ruling on plaintiffs' claims against Osco for negligence and breach of warranty of merchantability involving phenobarbital. *See Garside v. Osco Drug, Inc.,* CA No. 88–974–T (D.Mass. Jan. 31, 1989), *aff'd,* 895 F.2d 46 (1st Cir.1990). On March 13, 1990, this court granted Osco's motion for summary judgment on the remaining counts against it (Counts VII, VIII, XV, and XVI). *See* Mar. 13, 1990 Order. The only remaining counts of plaintiffs' third amended complaint are Counts V and VI against defendant McKesson.

## III

### *Analysis*

#### A. *Introduction*

In Count V of their third amended complaint, plaintiffs allege that McKesson "was negligent in the manufacturing and distribution of phenobarbitol [sic]...." Third Amended Complaint at ¶ 25. Plaintiffs allege that such negligence consisted of McKesson's

a) Failure to adequately test the phenobarbitol [sic] for evidence of the extreme risks involved in the consumption of this substance.

b) Failure to adequately prepare the phenobarbitol [sic] for manufacture to avoid or minimize the extreme risks and reactions associated with the consumption of this substance.

c) Failure to adequately warn consumers that the consumption of the phenobarbitol [sic] could be extremely hazardous to the health of the user of the product.

*Id.*

In Count VI, plaintiffs allege that "McKesson breached its implied warranties of merchantability and fitness for a particular purpose by manufacturing and distributing phenobarbitol [sic] which was not of merchantable quality, unsafe, and which lacked proper warnings and labels." Third Amended Complaint at ¶ 28.

On March 21, 1991, at a hearing on McKesson's motion for summary judgment, plaintiffs abandoned their design defect claims. As a result, this court's analysis focuses on McKesson's duty to warn Dr. Pryharski of the risks involved with the drug phenobarbital.

#### B. *Duty to Warn and the Learned Intermediary Rule*

McKesson contends that as a manufacturer of prescription drugs, it has a duty to warn the physician rather than the patient of the risks associated with a particular drug. McKesson's theory, known as the "learned intermediary" rule, enjoys widespread support.[3] The Fifth Circuit offered this explanation of the reasoning behind the rule:

We cannot quarrel with the general proposition that where *prescription* drugs are concerned, the manufacturer's duty to warn is limited to an obligation to advise the prescribing physician of any potential dangers that may result from the drug's use.... As a medical expert, the prescribing physician can take into account the propensities of the drug, as well as the susceptibilities of his patient.... The choice he makes is an informed one, an individualized medical judgment bottomed on a knowledge of both patient and palliative. Pharmaceutical companies then, who must warn ultimate purchasers of dangers inherent in patent drugs sold over the counter, in selling prescription drugs are required to warn only the prescribing physician, who acts as a 'learned intermediary' between manufacturer and consumer.

*Swayze v. McNeil Laboratories, Inc.,* 807 F.2d 464, 470 (5th Cir.1987) (quoting *Reyes*

---

**3.** At least 25 states, the District of Columbia, and Puerto Rico follow the "learned intermediary" rule. *See* Annotation, *Liability of Manufacturer or Seller for Injury or Death Allegedly Caused By Failure to Warn Regarding Danger in Use of Vaccine or Prescription Drug,* 94 A.L.R.3d 748 (1979 & Supp. Aug. 1990) (citing cases).

*v. Wyeth Laboratories*, 498 F.2d 1264 (5th Cir.), *cert. denied*, 419 U.S. 1096, 95 S.Ct. 687, 42 L.Ed.2d 688 (1974) (emphasis in original)).

██ In determining whether to apply the learned intermediary rule to this case, this court must first determine whether the Massachusetts Supreme Judicial Court ("SJC") would follow this rule. *See Kotler v. The American Tobacco Co.*, 926 F.2d 1217, 1224 (1st Cir.1990) ("[I]n elucidating state law for purposes of this diversity action, we must keep in mind that '[o]ur function is not to formulate a tenet which we, as free agents, might think wise, but to ascertain, as best we can, the rule that the state's highest tribunal would likely follow.'" (quoting *Porter v. Nutter*, 913 F.2d 37, 40–41 (1st Cir.1990))). Although the SJC has neither adopted nor rejected the rule, several factors suggest that it would follow the learned intermediary rule in this case.

As a preliminary matter, courts have recognized only two narrow exceptions to the learned intermediary rule, neither of which is applicable here.[4] The rule is most often rejected in the case of vaccines that are administered on a mass basis where no individual physician-patient relationship exists. *See, e.g., Petty v. United States*, 740 F.2d 1428, 1440 (8th Cir.1984) (swine flu vaccine); *Givens v. Lederle*, 556 F.2d 1341, 1345 (5th Cir.1977) (Sabin oral polio vaccine); *Reyes v. Wyeth Laboratories*, 498 F.2d 1264, 1277 (5th Cir.), *cert. denied*, 419 U.S. 1096, 95 S.Ct. 687, 42 L.Ed.2d 688

(1974) (oral polio vaccine); and *Graham v. Wyeth Laboratories*, 666 F.Supp. 1483, 1498 (D.Kan.1987) (DPT vaccine).

In a case involving oral contraceptives, the SJC recognized a second exception to the learned intermediary rule. *See MacDonald v. Ortho Pharmaceutical Corp.*, 394 Mass. 131, 475 N.E.2d 65, *cert. denied*, 474 U.S. 920, 106 S.Ct. 250, 88 L.Ed.2d 258 (1985). After first recognizing the acceptance of the learned intermediary rule in jurisdictions that have addressed the question of the extent of a manufacturer's duty to warn in cases involving prescription drugs, the court held that "[o]ral contraceptives ... bear peculiar characteristics which warrant the imposition of a common law duty on the manufacturer to warn users directly of associated risks." *Id.*, 475 N.E.2d at 69.

The court's clear distinction between oral contraceptives and other prescription drugs indicates that the SJC would follow the learned intemediary rule in this case. The court stated,

> Whereas a patient's involvement in decision-making concerning use of a prescription drug necessary to treat a malady is typically minimal or nonexistent, the healthy, young consumer of oral contraceptives is usually actively involved in the decision to use 'the pill,' as opposed to other available birth control products, and the prescribing physician is relegated to a relatively passive role.

---

4. In an appropriate case, the advertising of a prescription drug to the consuming public may constitute a third exception to the learned intermediary rule. By advertising directly to the consuming public, the manufacturer bypasses the traditional patient-physician relationship, thus lessening the role of the "learned intermediary." This "advertising" exception does not apply here. McKesson's Senior Vice President of Merchandising and Inventory Services stated in an affidavit that "McKesson has never marketed, promoted or advertised any prescription pharmaceutical product, including phenobarbital, to the consuming public." Toney Affidavit at ¶ 6. He further stated that to his knowledge, "no other distributor or manufacturer of prescription drugs has advertised phenobarbital." *Id.* Plaintiffs offered no evidence to contradict Mr. Toney's affidavit.

Several factors help explain the lack of phenobarbital advertising to the consuming public. First, phenobarbital has been widely used as an anticonvulsant since 1912. 6 M. Houts, R. Baselt & R. Cravey, *Courtroom Toxology* at Phen–65 (1990). Pharmaceutical companies typically advertise only recently approved prescription drugs. Second, federal law strictly regulates the advertising of prescription drugs. *See* 21 U.S.C. § 352(n); 21 C.F.R. § 202. For example, such advertisements must include "information in brief summary relating to side effects, contraindications, and effectiveness...." 21 U.S.C. § 352(n). According to Mr. Toney's affidavit, to comply with the regulations promulgated under the statute, an advertisement of phenobarbital would exceed nine pages in length. Toney Affidavit at ¶ 3.

*Id.* In recognizing that patient involvement in decision-making concerning use of a prescription drug is "minimal or nonexistent," the court implicitly endorsed a rationale often cited in support of the learned intermediary rule. *See* Comment, *Not Just for Doctors: Applying the Learned Intermediary Doctrine to the Relationship Between Chemical Manufacturers, Industrial Employers, and Employees,* 85 Nw.L.Rev. 562 (1991) (authored by Carole A. Cheney).

The First Circuit has also recognized that "[i]t is generally accepted ... that a prescription drug manufacturer has a duty to adequately warn prescribing physicians [and not the ultimate user] of the hazards posed by the use of its drugs." *Guevara v. Dorsey Laboratories, Div. of Sandoz, Inc.,* 845 F.2d 364, 366 (1st Cir.1988). *Guevara* involved the application of Puerto Rico law, and, in that respect, it is not controlling here. It does, however, indicate the First Circuit's acknowledgement of the general acceptance of the learned intermediary rule in the United States. *See also Brochu v. Ortho Pharmaceutical Corp.,* 642 F.2d 652, 656 (1st Cir.1981) (applying New Hampshire law) ("In cases involving ethical [i.e., prescription] drugs, the manufacturer must warn the physician, not the patient.").

As a result of the universal acceptance of the learned intermediary rule, the inapplicability of the two recognized exceptions to the rule to the case *sub judice,* and the SJC's implicit endorsement of the rule in *MacDonald,* this court determines that the SJC would likely follow the rule in this case.

## C. *Adequacy of McKesson's Warning*

■ Assuming that the SJC would follow the rule in this case, the next step would ordinarily involve a trial on the issue of the adequacy of the manufacturer's warning to the physician. *See MacDonald,* 475 N.E.2d at 71 ("Whether a particular warning measures up ... is almost always an issue to be resolved by a jury...."). A trial on the adequacy of the manufacturer's warning to the physician is not necessary, however, when the physician acknowledges that he would not have passed the warning on to his patients. The physician's decision not to inform his patients of the known risks of a particular drug constitutes an intervening superseding cause. *See Guevara,* 845 F.2d at 367.

■ On this point, the First Circuit's decision in *Guevara* provides significant guidance. In that case, the court noted that if the treating doctor knew of the allergenic properties of phenobarbital, "the failure to warn could not have been the cause of the injury." *Id.* Here, Dr. Pryharski noted in his affidavit that "TEN is a condition which has been identified for a number of years as has its alleged connection to the ingestion of phenobarbital...." Pryharski Affidavit at ¶ 5. Dr. Pryharski also stated that he does not now, nor did he in 1982 when he treated Milissa, discuss with his patients any causative connection between phenobarbital and TEN. *Id.* at ¶ 6. Plaintiffs have not challenged Dr. Pryharski's statements.

As a result of Dr. Pryharski's statements, McKesson's alleged failure to warn could not have been the cause of Milissa's injuries. Together with this court's adoption of the learned intermediary rule, the lack of proximate cause necessitates allowance of McKesson's motion for summary judgment.[5]

---

**5.** The First Circuit's opinion in *Guevara* provides further support for allowing McKesson's motion for summary judgment. In that case, the court expressly rejected plaintiff's argument that the manufacturer's warning was inadequate because it did not specifically warn of a dermal reaction. 845 F.2d at 366. The facts in *Guevara* are not dissimilar to this case. The plaintiff in *Guevara* began to experience a skin rash that caused blisters to break out on her body after she took phenobarbital for three days. *Id.* at 365. The court noted that plaintiff's own expert testified that such a danger was already well known to the medical community. *Id.* at 366–67. The expert's testimony in *Guevara* comports with Dr. Pryharski's affidavit that he knew of the connection between TEN and the ingestion of phenobarbital. *See* Pryharski Affidavit at ¶ 5; *see also* 4 *Lane Med. Litigation Guide* Glossary at 35 (1990) (defining TEN as "[a] skin disease characterized by blistering, exfoliation, and painful erythema. It can be caused by ... *drug reactions.*") (emphasis added).

## IV

*Third Party Defendant Pryharski's
Motion for Summary Judgment*

On October 2, 1987, defendant Osco filed a third-party complaint against Dr. Pryharski. Osco's third party complaint asserts no cause of action against defendant Dr. Pryharski independent of its claims for contribution (Count I) and indemnification (Count II). *See, e.g.,* Third Party Complaint at ¶ 5 ("If said defendant and third party plaintiff are [sic] found negligent ... then ... [Osco] is entitled to contribution...."). On March 13, 1990, this court granted Osco's motion for summary judgment on the remaining counts against it. *See* Mar. 13, 1991 Order. As plaintiffs never named Dr. Pryharski as a defendant in this action, this court's prior allowance of Osco's motion for summary judgment entitles Dr. Pryharski to summary judgment.