Milissa **GARSIDE**, et al., Plaintiffs, Appellants,

v.

**OSCO DRUG, INC.**, et al., Defendants, Appellees.

No. 91–1915.

United States Court of Appeals, First Circuit.

Heard July 27, 1992.

Decided Sept. 30, 1992.

Andrew C. Schultz with whom Field & Schultz, Boston, Mass., was on brief, for plaintiffs, appellants.

Daniel J. Lyne with whom Hanify & King, P.C., Boston, Mass., was on brief, for defendant, appellee McKesson Corp.

Before TORRUELLA and STAHL, Circuit Judges, and HORNBY,* District Judge.

STAHL, Circuit Judge.

In this "failure to warn" case, plaintiffs-appellants Maryanne Garside and her daughter, Milissa, appeal the district court's entry of summary judgment in favor of defendant-appellee McKesson Corporation ("McKesson"). Because we conclude that the district court's entry of summary judgment was premature, we reverse.

## I. STANDARD OF REVIEW

Summary judgment is appropriate where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c); see also Celotex Corp. v. Catrett, 477 U.S. 317, 323, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986); Aponte–Santiago v. Lopez–Rivera, 957 F.2d 40 (1st Cir.1992). The burden is upon the moving party to "put the ball in play, averring 'an absence of evidence to support the nonmoving party's case.' " Garside v. Osco Drug, Inc., 895 F.2d 46, 48 (1st Cir.1990) (quoting Celotex, 477 U.S. at 325, 106 S.Ct. at 2553). "The burden then shifts to the nonmovant to establish the existence of at least one fact issue which is both 'genuine' and 'material.' " Id. (citations omitted).

In determining whether factual issues exist, we read the record "in the light most amiable to the nonmovants and indulge all reasonable inferences favorable to them." Id. Appellate review of the district court's grant of summary judgment is plenary. Id.

## II. BACKGROUND

Viewing the record in a light most favorable to plaintiffs, we summarize the relevant facts. On April 20, 1982, Maryanne Garside took her three-year-old daughter Milissa, who was complaining of an earache, to Quincy Pediatric Associates ("QPA"). The QPA doctor concluded that Milissa had an ear infection and prescribed amoxicillin, an antibiotic. As Ms. Garside and Milissa were en route to the pharmacy to fill the prescription, Milissa suffered a febrile seizure. Ms. Garside immediately drove Milissa to Quincy City Hospital where she was admitted and remained for several days.

At Quincy City Hospital, Milissa was given amoxicillin for her ear infection and phenobarbital, a barbiturate, for her seizures. On April 23, 1982, Dr. Andrew Pryharski of QPA discharged Milissa from the hospital and gave her prescriptions for both amoxicillin and phenobarbital.

On April 30, 1982, a rash began to develop on Milissa's neck. The rash worsened and, on the following day, Ms. Garside took Milissa back to QPA. After examining Milissa, Dr. Pryharski concluded that she might have an allergy to the amoxicillin. As a result, he advised discontinuance of the amoxicillin and wrote a prescription for erythromycin, a substitute antibiotic.

By May 2, 1982, the rash had become so severe that Ms. Garside took her daughter to Massachusetts General Hospital, where Milissa spent two days in the burn unit. Milissa was then transferred to the Shriner's Burn Institute, where she was diagnosed as having toxic epidermal necrolysis ("TEN"), a condition caused by the poisoning of the skin tissue. Currently, Milissa is legally blind, suffers from severe hearing loss, and has scars over most of her body.

Subsequently, Ms. Garside and Milissa sued, inter alia, McKesson, the manufac-

---

* Of the District of Maine, sitting by designation.

turer of the phenobarbital.[1] They argued that McKesson's failure to warn Dr. Pryharski of the known risks of taking phenobarbital and amoxicillin in combination caused Milissa's harm. In response, McKesson moved for summary judgment, arguing that there was no evidence in the record to support the element of causation.

McKesson's motion relied entirely upon the following statement in Dr. Pryharski's affidavit:

TEN is a condition which has been identified for a number of years [and] has its alleged connection to the ingestion of phenobarbital and/or amoxicillin, other drugs, and even in some cases no drugs. I do not now, nor did I in 1982, discuss with my patients any causative connection between those drugs and TEN.

Based upon the above statement, McKesson argued that Dr. Pryharski's practice of not informing his patients of the risks he understood to be associated with the ingestion of phenobarbital and/or amoxicillin constituted an intervening-superseding cause of Milissa's harm.

In response to Dr. Pryharski's affidavit, appellants submitted the affidavit of Dr. Theoharis Constantin Theoharides, their expert on the question of causation. In his affidavit, Dr. Theoharides focused on the inadequacy of the warnings given by McKesson. To support his contention that in 1982 McKesson should have warned physicians about the increased risk of acquiring TEN from the ingestion of phenobarbital and amoxicillin in combination, he included a list of approximately twenty-three articles, published prior to 1981, discussing "a relationship between amoxicillin and/or phenobarbital and TEN...." Following this list, the affidavit continued:

It is clear even from the literature prior to 1981 listed above that barbiturates and penicillins are implicated in TEN. There have been many more publication[s] not listed here....

Amoxicillin is a semi-synthetic penicillin and phenobarbital is one of the barbitu-

rates. Even though amoxicillin is typically used to treat ear infections, such as Milissa's, and phenobarbital is probably the main drug used to treat febrile seizures, it is obvious that one should avoid combining the two whenever possible. Thus, the warnings contained in the 1981 Physician's Desk Reference were certainly insufficient to warn of the possible causal relationship between amoxicillin and TEN, the possible causal relationship between phenobarbital and TEN, and the extreme danger of prescribing them in combination. In many drug reactions, the response is idiosyncratic, which means there may not be any need for predisposition or prior exposure. However, one should avoid compounding on a possible problem by addition of one or more of the other causative agents.

It is my opinion, which I can state with reasonable medical certainty, that had proper warnings been given by the manufacturers of the amoxicillin and phenobarbital, the treating physician would have been on notice not to prescribe them in combination and, therefore, said warnings were inadequate under all of the circumstances....

It is my opinion[,] which I can state with reasonable medical certainty[,] that there is a causal relationship between the failure to give proper warning and the injury suffered by Milissa Garside.

After reviewing the above evidence, the district court held that a trial on the adequacy of McKesson's warning was not necessary. *See Garside v. Osco Drug, Inc.,* 764 F.Supp. 208, 212 (D.Mass.1991). The court premised its ruling upon the principle that where a treating physician knows of the risks associated with a drug but does not pass that warning along to the patient, the doctor's decision not to warn constitutes an intervening-superseding cause of the patient's harm. *See id.* (citing *Guevara v. Dorsey Lab.,* 845 F.2d 364, 366 (1st Cir.1988) (applying Puerto Rican law)). Applying this principle, the court found

---

**1.** This case previously came before us on a motion for summary judgment brought by defendants Hoffman–Laroche, Inc., and Beecham,

Inc., the alleged manufacturers of the drug amoxicillin. *See Garside,* 895 F.2d at 47–48.

that Dr. Pryharski's admission that he would not warn his patients of the "alleged connection" between TEN and the ingestion of phenobarbital and/or amoxicillin was an intervening-superseding cause of Milissa Garside's injuries. *Id.*

Because McKesson failed to point to sufficient evidence in the record, however, to show that Dr. Pryharski was aware in 1982 of an increased risk of acquiring TEN from the combined ingestion of phenobarbital and amoxicillin, we conclude that the district court prematurely entered judgment in favor of McKesson.

## III. DISCUSSION

■ Under Massachusetts law,[2] a product may be unreasonably dangerous if the manufacturer fails to warn of a non-obvious risk associated with the normal use of the product about which the manufacturer knows or has reason to know. *See MacDonald v. Ortho Pharmaceutical Corp.*, 394 Mass. 131, 475 N.E.2d 65, 68, *cert. denied*, 474 U.S. 920, 106 S.Ct. 250, 88 L.Ed.2d 258 (1985); *Knowlton v. Deseret Medical, Inc.*, 930 F.2d 116, 119–120 (1st Cir.1991) (applying Massachusetts law). In a typical strict products liability case, the manufacturer's duty to warn extends to the consumer of the product. Where the product is a prescription drug, however, it is widely accepted that the manufacturer's duty to warn runs to the physician rather than the patient. *See, e.g., Knowlton*, 930 F.2d at 120 n. 2 ("It is generally accepted that in a case involving medical products prescribed or used by a physician or trained medical personnel, the warning runs to the physician not the patient."); *see also MacDonald*, 475 N.E.2d at 69 (recog-

nizing the general applicability of the prescription drug rule).

The rationale underlying the prescription drug rule is that the prescribing physician, as the "learned intermediary" standing between the manufacturer and consumer/patient, is generally in the best position to evaluate the potential risks and benefits of ingesting a certain drug and to advise the patient accordingly. Under this doctrine, the manufacturer's duty is fulfilled once it adequately warns the physician. *Thomas v. Hoffman–LaRoche, Inc.*, 949 F.2d 806, 811 (5th Cir.), *cert. denied*, —— U.S. ——, 112 S.Ct. 2304, 119 L.Ed.2d 226 (1992).

Where the manufacturer fails to provide the physician with an adequate warning, courts have held that the manufacturer may still be shielded from liability if it can show that the prescribing physician would not have heeded an adequate warning. *See, e.g., Guevara*, 845 F.2d at 367 (dictum); *Plummer v. Lederle Lab.*, 819 F.2d 349, 358–59 (2d Cir.), *cert. denied*, 484 U.S. 898, 108 S.Ct. 232, 98 L.Ed.2d 191 (1987). In so holding, courts have reasoned that the physician's conduct acts as an intervening-superseding cause of the plaintiff's injury which vitiates any liability on the part of the manufacturer.[3] *See, e.g., Plummer*, 819 F.2d at 358–59; *Guevara*, 845 F.2d at 367.

In a recent case where a defendant proffered a similar intervening-superseding cause argument, this Court concluded that the Massachusetts Supreme Judicial Court would apply a rebuttable presumption in favor of the plaintiff that a physician would have heeded an adequate warning.[4] *See Knowlton*, 930 F.2d at 123 (citing *Har-*

---

**2.** Both parties agree that the substantive law of Massachusetts governs our analysis in this diversity action.

**3.** McKesson asserted below that the Massachusetts Supreme Judicial Court recognized this intervening-superseding cause argument in *MacDonald*, 475 N.E.2d at 68. Such assertion was misplaced. In *MacDonald*, the Massachusetts Supreme Judicial Court recognized the applicability of a "superseding cause" argument where the manufacturer *fulfills its duty* to warn the physician but the physician fails to communicate that warning to the patient. *Id.*

**4.** Such a presumption is consistent with the principle followed in this Circuit that "a physician's carelessness, even if it takes an unanticipated form, should not relieve a drug manufacturer of liability if the manufacturer's failure to warn adequately *may* have contributed to that carelessness." *Brochu v. Ortho Pharmaceutical Corp.*, 642 F.2d 652, 660 (1st Cir.1981) (citing *McCue v. Norwich Pharmacal Co.*, 453 F.2d 1033, 1035 (1st Cir.1972)) (emphasis supplied).

*low v. Chin,* 405 Mass. 697, 545 N.E.2d 602, 606 (1989) and *Restatement (Second) of Torts* § 402A cmt. j (1965)). In so concluding, we relied upon the reasoning of a case decided by the Ohio Supreme Court, *see Seley v. G.D. Searle & Co.,* 67 Ohio St.2d 192, 423 N.E.2d 831, 838 (1981), and followed by the Massachusetts Supreme Judicial Court. The Ohio Supreme Court explained the rebuttable presumption as follows:

> Comment j to Section 402 A (2 Restatement of Torts 2d 353) establishes a presumption that an adequate warning, if given, will be read and heeded. In such a situation, the presumption established works to the benefit of the manufacturer. However, where no warning is given, or where an inadequate warning is given, a rebuttable presumption arises, beneficial to the plaintiff, that the failure to adequately warn was a proximate cause of the plaintiff's ingestion of the drug. This presumption, absent the production of rebutting evidence by the defendant, is sufficient to satisfy the first branch of the plaintiff's proximate cause burden.

*See Knowlton,* 930 F.2d at 123 (quoting *Seley,* 423 N.E.2d at 838).

■ Under Massachusetts law, therefore, the burden shifting in a failure to warn case such as the instant one works as follows: (1) the plaintiff carries the initial burden of producing sufficient evidence that the defendant manufacturer failed to warn of a non-obvious risk about which the manufacturer knew or should have known, *see MacDonald,* 475 N.E.2d at 68; (2) as-

suming the plaintiff raises a triable issue on this question, a rebuttable presumption arises that the physician would have heeded an adequate warning, *see Knowlton,* 930 F.2d at 123; (3) defendant must then come forward with sufficient evidence to rebut that presumption, *see id.;* and (4) once the presumption is rebutted, plaintiff must produce sufficient evidence to create a triable issue on the question of causation. Massachusetts law further instructs courts to be mindful that "generally, questions of causation, proximate and intervening, present issues for the jury to decide." *Solimene v. B. Grauel & Co.,* 399 Mass. 790, 507 N.E.2d 662, 665 (1987) (citing long line of cases).

■ In the instant case, therefore, we must determine *de novo* whether plaintiffs satisfied their burden of raising a triable issue on the question of whether McKesson failed to warn Dr. Pryharski of a non-obvious risk about which it knew or should have known.[5] To satisfy their initial burden, plaintiffs submitted the affidavit of Dr. Theoharides, their expert on causation.[6] In his affidavit, Dr. Theoharides proffered a list of twenty-three articles published prior to 1981 which he contends contain information making it "clear" that "barbiturates and penicillins are implicated in TEN."[7] Based upon the existence of these pre–1981 publications, Dr. Theoharides asserts that, in 1982, a physician should have been warned about the risks of acquiring TEN from the combined ingestion of phenobarbital and amoxicillin. According to Dr. Theoharides, "had the physician been given sufficient information[,]" s/he would

---

5. Because it held that the adequacy of McKesson's warning was irrelevant as a matter of law, the district court did not reach this question.

6. In its summary judgment motion, McKesson does not dispute that it failed to warn Dr. Pryharski of the risk of acquiring TEN from the combined ingestion of phenobarbital and amoxicillin. Rather, it contends that such alleged failure to warn is irrelevant in light of Dr. Pryharski's alleged awareness of that risk. Thus, for the limited purpose of this appeal, we assume that plaintiffs are correct in their assertion that McKesson failed to warn Dr. Pryharski of this risk.

7. Dr. Theoharides' affidavit also includes a speculative statement concerning the increased statistical risk of acquiring TEN—a statistic which he formulated based upon his interpretation of a "recently published [1990] retrospective survey of TEN cases between 1972 and 1986...." Clearly, Dr. Theoharides' reliance upon an article published well after Melissa Garside's ingestion of the two drugs cannot inform any of his testimony at trial. However, to the extent that McKesson interprets all of Dr. Theoharides' conclusions to be infected with the knowledge Dr. Theoharides gleaned from the 1990 publication, we reject such interpretation as a patent misunderstanding of the statements contained in paragraph 17 of his first affidavit.

have known that "alternatives [to phenobarbital and amoxicillin] were available ...; erythromycin could have been prescribed instead of amoxicillin [and/or] sodium valproate could have been prescribed instead of phenobarbital."

Read in a light most favorable to plaintiffs, we think that Dr. Theoharides' affidavit satisfied plaintiffs' initial burden. Thus, plaintiffs are entitled to a rebuttable presumption that, had McKesson warned Dr. Pryharski, he would have heeded the warning. *See Knowlton*, 930 F.2d at 123. For the reasons set forth below, we find that McKesson failed to point to sufficient evidence in the record to rebut that presumption.

First, to show that Dr. Pryharski would not have heeded an adequate warning, McKesson relied solely upon Dr. Pryharski's October 27, 1989, affidavit. This affidavit fails, however, to show that Dr. Pryharski was aware *in 1982* that there was a risk of acquiring TEN from the combined ingestion of phenobarbital and amoxicillin. Instead, it contains the following statement: "TEN is a condition which has been identified for a number of years [and] has its alleged connection to the ingestion of phenobarbital and/or amoxicillin, other drugs, and even in some cases no drugs." Based on this statement, we know only that, on October 27, 1989, the date the affidavit was sworn out, Dr. Pryharski was aware that an "alleged connection" between TEN and the ingestion of the two drugs had been "identified" for an unspecified *"number of years...."* We do not know that Dr. Pryharski was aware of such "alleged connection" *in 1982.* As such, the affidavit is insufficient to show Dr. Pryharski's knowledge.

Second, Dr. Pryharski's use of the phrase "alleged connection" is problematically vague. For one thing, a reader could reasonably construe Dr. Pryharski's use of the word "alleged" to mean that he did not in fact believe such a connection existed. Moreover, it is not clear that Dr. Pryhar-

ski's use of the word "connection" encompasses the *causal* relationship, discussed by Dr. Theoharides, between TEN and the *combined* ingestion of the two drugs.

Our conclusion that Dr. Pryharski's affidavit falls short of entitling McKesson to summary judgment is buttressed by an examination of the facts of a line of cases in which courts have held a defendant manufacturer to be free from liability on the basis of a physician's pre-trial statement that s/he would not have heeded an adequate warning. In all such cases, courts have required that the physician's testimony show unequivocally that s/he knew at the relevant time *all* the information which would have been included in a proper warning. *See, e.g., Thomas*, 949 F.2d at 811–14 (applying Mississippi law) (holding that a warning stating that seizures had occurred in 9 of 400,000 patients who had ingested the drug Accutane would not have altered physician's behavior where he testified that he was aware at the time he prescribed the drug of "the possibility that Accutane may have caused seizures in very rare cases"); [8] *Plummer*, 819 F.2d at 358 (applying California law) (holding that a warning stating that an unimmunized person should avoid contact with a polio vaccinee for 30 days would not have altered physician's behavior where he testified that he was aware of that fact); *Stanback v. Parke, Davis and Co.*, 657 F.2d 642, 645 (4th Cir.1981) (applying Virginia law) (holding that a warning stating that there was a risk of acquiring a neurological disorder from ingesting the drug Fluogen would not have altered physician's behavior where his "decisions and actions [were] made in full knowledge of [that] information"); *Windham v. Wyeth Lab., Inc.*, 786 F.Supp. 607, 612 (S.D.Miss. 1992) (applying Mississippi law) (holding that a warning stating that a pregnant patient who uses Phenergan suppositories might suffer adverse consequences would not have altered physician's behavior where he testified that he was aware of such risk and "weighed the risk of the drug against the benefit of the drug" before

---

**8.** In *Thomas,* the Fifth Circuit determined that Mississippi law would not recognize the presumption that a physician would have heeded

an adequate warning. *See Thomas,* 949 F.2d at 811–14.

prescribing it) (physician further testified unequivocally in the face of an updated warning that such warning would not have altered his behavior). In this case, Dr. Pryharski's testimony is far from unequivocal on this point.[9]

In sum, we find that Dr. Pryharski's affidavit falls short of entitling McKesson to judgment in its favor. Accordingly, we reverse.

*Reversed and remanded.*

9. We have grave reservations about whether the Massachusetts Supreme Judicial Court would even follow the above-cited line of cases. In light of both the presumption afforded a plaintiff under Massachusetts law that a proper warning would be heeded, *see Knowlton,* 930 F.2d at 123; *Harlow,* 545 N.E.2d at 606, and the general rule that questions of intervening causation are better decided by a jury, *Solimene,* 507 N.E.2d at 665, the Massachusetts Supreme Judicial Court would likely be reluctant to allow a physician's pre-trial testimony about what s/he would have done had s/he been warned to insulate a defendant manufacturer from liability. Such reluctance would find support in a line of cases holding that a physician's statement about what s/he would have done in the face of an adequate warning raises a credibility issue which must be decided by a jury. *See Doe v. Miles Lab., Inc.,* 927 F.2d 187, 195 n. 32 (4th Cir.1991) (applying Maryland law) (dictum) ("Although [the physician] testified that she would have administered the drug regardless of the AIDS risk, her hindsight opinion is not conclusive of what she would have done had she been invested with all the pertinent facts regarding [the drug]. Thus, the causation issue, ... presents a genuine issue of material fact."); *Williams v. Lederle Lab.,* 591 F.Supp. 381, 386 (S.D.Ohio 1984) (applying Ohio law) ("What [the physician] might or might not have done involves to some degree his credibility. Thus, we conclude that it is for the jury to determine whether the presence of an adequate warning would have made no difference in [the physician's] decision."); *Strumph v. Schering Corp.,* 256 N.J.Super. 309, 606 A.2d 1140, 1146–48 (App.Div.1992) ("A well-prepared advocate may be able to erode at trial the physicians' testimony [that they would have prescribed the drug in the face of a proper warning]").