**Francisco ARENDS, et al., Plaintiffs,**

v.

**EUROBANK AND TRUST COMPANY, Defendant,**

and

**Federal Deposit Insurance Corporation, in its corporate capacity and as Receiver for Banco Nacional, N.A., Intervenor.**

Civ. No. 92–1907(JAF).

United States District Court,
D. Puerto Rico.

Feb. 25, 1994.

---

Jaime Brugueras, San Juan, PR, for plaintiff.

Rafael Arrilliga–Torréns, Jr., San Juan, PR, for defendant.

Gustavo A. Gelpí, Feldstein, Gelpi & Gotay, San Juan, PR, for FDIC.

Howard J. Herman, Acting Regional Counsel, FDIC, John J. Graubard, Counsel (Litigation), FDIC, Marie D. Nardino, Sr. Atty. (Litigation), FDIC, New York City, for defendant.

## OPINION AND ORDER

FUSTE, District Judge.

Plaintiffs, twenty-six former employees of Banco Nacional, N.A., filed an action in the Superior Court of Puerto Rico requesting severance pay from a bank which assumed some of the assets and liabilities of Banco Nacional after it was declared insolvent by the Comptroller of the Currency. The Federal Deposit Insurance Corporation, as receiver for Banco Nacional, intervened, removed the suit to this court, and now moves to dismiss the plaintiffs' action. We find that neither Eurobank nor the FDIC is liable to any of the plaintiffs for severance pay.

## I.

### Background

On January 24, 1992, the Comptroller of the Currency declared Banco Nacional, N.A. ("Banco Nacional") insolvent, and appointed the Federal Deposit Insurance Corporation ("FDIC") as receiver. The same day, the FDIC carried out a Purchase and Assumption Agreement with Eurobank & Trust Co. ("Eurobank").[1] As a result of the agree-

---

1. A Purchase and Assumption (P & A) Agreement is the preferred manner by which the FDIC handles the failure of a bank. *Gunter v. Hutcheson,* 674 F.2d 862, 865 (11th Cir.), *cert. denied,* 459 U.S. 826, 103 S.Ct. 60, 74 L.Ed.2d 63 (1982). Such agreements involve the assuming bank, and the FDIC in both its capacity as receiver and as corporate insurer. In a typical P & A Agreement, the assuming bank purchases the assets and assumes the liabilities of the failed bank. Those assets which are not of high quality are sold to the FDIC in its corporate capacity, which

ment, Eurobank acquired a substantial portion of Banco Nacional's deposits, assets and liabilities.

While many of Banco Nacional's employees were hired by Eurobank, others, including plaintiffs, were not as fortunate. In addition to losing their jobs, plaintiffs received no severance benefits, which are mandated under Section 6 of Puerto Rico Law 80, of May 30, 1976, 29 L.P.R.A. § 185f, when employees are terminated without just cause. After the FDIC denied their claims for severance benefits, plaintiffs brought an action in state court against Eurobank, alleging a violation of Law 80. The FDIC intervened and removed the case to this court, see *Arends v. Eurobank and Trust Company*, 146 F.R.D. 42 (D.P.R.1993), and now moves to dismiss the action for failure to state a claim under Fed.R.Civ.P. 12(b)(6).

### A. *Standard of Review*

Although the FDIC has filed a motion to dismiss, because the defendants presented, and we have accepted, matters outside of the pleadings, the motion shall be treated as one for summary judgment. Fed.R.Civ.P. 12(c).

### B. *Standard for Summary Judgment*

The well-known purpose of summary judgment is "to pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial." *Garside v. Osco Drug, Inc.*, 976 F.2d 77, 78 (1st Cir.1992) (quoting Fed.R.Civ.P. 56 advisory committee's note). Therefore, if the pleadings, depositions, answers to interrogatories, admissions, and any affidavits on file show that there is no genuine issue as to a material fact, then the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c).

■ Where, as here, the moving party does not have the burden of proof at trial, that party must make a showing that the evidence is insufficient to support the nonmoving party's case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986). Once this showing has been made, it is up to the nonmoving party to establish the existence of a genuine disagreement as to some material fact. *United States v. One Parcel of Real Property*, 960 F.2d 200, 204 (1st Cir.1992). In this context, "genuine" means that "the evidence is such that a reasonable jury could return a verdict for the nonmoving party," and a "material fact" is one which "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252, 248, 106 S.Ct. 2505, 2512, 2510, 91 L.Ed.2d 202 (1986).

■ Plaintiffs contend that they were employed by Eurobank following the closure of Banco Nacional until Eurobank terminated them, without good cause, one week after the takeover of Banco Nacional's operations. Defendants argue that the Financial Institutions Reform, Recovery, and Enforcement Act of 1989 ("FIRREA"), which establishes procedures for the receivership of insolvent financial institutions, preempts Puerto Rico labor statutes, while plaintiffs contend that federal law is not implicated because they are merely seeking severance payments against Eurobank. We do not address the preemption question because we find no conflict between state and federal law. In order to collect benefits from Eurobank under Puerto Rico law, plaintiffs must establish that they were employed by the bank, which they have completely failed to do.[2]

Eurobank and the FDIC have both produced affidavits and documents which clearly

---

attempts to collect on the returned assets. In order to accomplish the purchase of the failed bank by the assuming bank with as little disruption as possible, such agreements are carried out with great speed, usually overnight. *Id.*

**2.** 29 L.P.R.A. § 185a provides:

Every employee in commerce, industry or any other business or place of employment, designated hereinafter as the establishment, in which he works for compensation of any kind,

under a contract without a fixed time, who is discharged from his employment without good cause, shall be entitled to receive from his employer, in addition to the salary he may have earned:

(a) the salary corresponding to one month as indemnity;

(b) an additional progressive indemnity equivalent to one week for each year of service.

establish that plaintiffs' positions with Banco Nacional were terminated when that institution was declared insolvent. Some of the plaintiffs then signed temporary employment contracts with Ross Resources, an agency which provided services for the FDIC, as receiver, in order to complete work associated with the closing of the bank. Plaintiffs have produced nothing more than a bare assertion that they worked for Eurobank after the transfer, and were terminated by that institution. We find that the plaintiffs were never employed by Eurobank, in light of the fact that the FDIC delivered to each employee a notice of termination, as well as orally communicating that as a result of the liquidation, all employees of Banco Nacional were terminated. Plaintiffs assert that they were hired and then terminated by Eurobank when the opposite fact was clearly within their knowledge, and where each of the plaintiffs filed a claim with the FDIC for severance benefits prior to filing this lawsuit, thus acknowledging that the FDIC, as receiver for Banco Nacional, had terminated their employment.

Because Eurobank never employed any of the plaintiffs, we agree with the defendants that Eurobank cannot be directly liable as an employer under Puerto Rico law. In addition, we are unable to find that Eurobank inherited liability to former employees as an acquirer of a going business, pursuant to 29 L.P.R.A. § 185f.[3] In light of the undisputed factual showing that Eurobank did not continue to use the services of plaintiffs, the clear language of the statute establishes that there is no liability on the part of Eurobank to these plaintiffs.

3. 29 L.P.R.A. § 185f provides in pertinent part:

In the case of transfer of a going business, if the new acquirer continues to use the services of the employees who were working with the former owner, such employees shall be credited with the time they have worked in the basis under former owners. In the event that the new acquirer chooses not to continue with the services of all or any of the employees and hence does not become their employer, the former employer shall be liable for the compensation provided herein, and the purchaser shall retain the corresponding amount from the selling price stipulated with respect to the

## II.

### *Liability of the FDIC*

Because plaintiffs have no cause of action against Eurobank, their only hope to obtain benefits is from the FDIC, as receiver of Banco Nacional. The FDIC contends that the plaintiffs have failed to follow the appropriate procedures as mandated by FIRREA, and we must agree. The First Circuit, in conformance with several other circuits, has found that compliance with and exhaustion of the administrative remedies contained in FIRREA is required. *Marquis v. F.D.I.C.*, 965 F.2d 1148, 1151 (1st Cir.1992). *See also Rexam Ltd. Partnership v. Resolution Trust Corp.*, 754 F.Supp. 245, 246 (D.P.R.1990).

As part of the intricate scheme to deal expeditiously with insolvent institutions, FIRREA requires the FDIC to publish a notice informing creditors to "present their claims, together with proof, to the receiver by a date specified in the notice which shall be not less than 90 days after the publication of such notice." 12 U.S.C. § 1821(d)(3)(B). After such claims are filed, the receiver has 180 days in which to act upon the claim. Upon the expiration of the 180–day period, or the receipt by the claimant of notice of the receiver's decision regarding the claim, whichever event occurs first, the claimant is allowed a sixty-day period in which to file suit on the claim. 12 U.S.C. § 1821(d)(6). Strict compliance with this timetable is required by FIRREA. *See FDIC v. Shain, Schaffer & Rafanello*, 944 F.2d 129 (3d Cir. 1991).

According to the uncontroverted facts before us, sixteen of the plaintiffs received notice of the denial of their claims from the FDIC on February 10, 1992[4] and the re-

business. In case he discharges them without good cause after the transfer, the new owner shall be liable for any benefit which may accrue under sections 183a–1851 of this title to the employee laid off.

4. The plaintiffs who received notice on February 10, 1992 are Angel Rocafort González, Fernando Quiñones, Francisco Arends, Madelaine Riefkohl Gorbea, José E. Alegría, Rafael Blanes, Evelyn Mujica, Ivette Rotger de Galarza, Magda Morales, Ruth Díaz Rosado, Manuel Mellado Ufret, Carlos E. Quiles, Luz N. Martínez, Rubin Alicea, Pedro A. Villodas Colón, and Awilda Rosado.

maining plaintiffs [5] then were notified by letters dated July 9, 1992. This suit was initiated on June 3, 1992, a date which does not fall in the sixty-day period for any of the plaintiffs; the first group having delayed too long and the second group having failed to allow adequate time for the FDIC to respond. As to the first group of plaintiffs, 12 U.S.C. § 1821(d)(6)(B)(ii) provides:

> [I]f any claimant fails to file suit on such claim before the end of the 60–day period described in subparagraph (A), the claim shall be deemed to be disallowed as of the end of such period, such disallowance shall be final, and the claimant shall have no further rights or remedies with respect to such claim.

As a result of the failure to follow the administrative strictures of FIRREA, this court lacks subject matter jurisdiction over this group of plaintiffs, and their claim is dismissed.

■ Those who received notice on July 9 present a somewhat different situation, since they joined this action prior to being notified by the FDIC of the denial of their claim. Because they acted precipitously, we will address the matter on the merits. Each of these plaintiffs was denied severance pay because the FDIC found that they were dismissed as a result of the closing of Banco Nacional, which is a good cause for dismissal and exempts an employer from paying severance benefits under Law 80. "[F]ull, temporary or partial closing of the operations of the establishment" is one of the enumerated definitions of good cause which relieves an employer of the need to pay severance benefits, 29 L.P.R.A. § 185b, and, therefore, we agree with this analysis and find that these plaintiffs are not eligible for any severance pay.

### III.

#### Conclusion

Because there is no issue of material fact as to whether the plaintiffs were ever employed by Eurobank, we **GRANT** the motion for summary judgment as to that defendant. The plaintiffs who received notice of the denial of their claims from the FDIC on February 10, 1992 and failed to file suit within the sixty-day deadline, neglected to follow the administrative procedures as mandated by FIRREA and, therefore, we **DISMISS** their claim against defendant FDIC for lack of jurisdiction. Finally, there is no issue of material fact as to whether the remaining plaintiffs were terminated by the FDIC, as receiver for Banco Nacional, for good cause and, therefore, we **GRANT** the FDIC's motion for summary judgment as to those plaintiffs.

**IT IS SO ORDERED.**

---

**5.** The plaintiffs who were notified on July 9, 1992 are Betsaida Rodríguez, Belinda Ortiz, Ingribel Soto, Aida Olivieri Díaz, Gerardo Jaca Vázquez, Blanca Montalvo, Angélica Ruiz Vázquez, Miriam Santiago, Juanita Garced, and William Colón Pagán.