BELONIE BOUCHARD *vs.* DIRIGO MUTUAL FIRE INSURANCE COMPANY.

## Somerset.   Opinion January 5, 1916.

*Gasoline Engine.*   *Fire Policy.*   *Incréase of Risk.*   *Insurance.*
*Negligence.*   *Nonsuit.*

Action on fire insurance policy. The jury returned a verdict for the plaintiff in the sum of $1,534.63, and the case is before the court on the defendant's general motion for a new trial.

*Held:*

1. The question whether or not there was a custom to thresh grain by the use of a gasoline engine for motive power, and its relation to the case if there was such custom, with all other issues of fact, were for the jury.

2. Gross negligence is the synonym for wilful and wanton injury.—the intentional failure to perform a manifest duty.

3. How much care will, in a given case, relieve a party from the imputation of gross neglect, or what omission will amount to the charge, is necessarily a question of fact, depending upon a great variety of circumstances, which the law cannot exactly define. It was for the jury to decide the question whether gross negligence was, or was not, proved in this case.

4. We are not authorized to say that using a gasoline engine in a barn, for threshing grain, as in this case, is gross negligence as matter of law. The case was tried by able counsel, and in the absence of exceptions we must assume that the charge of the presiding Justice correctly stated the law, as well as the issue.

On motion for new trial by defendant. Motion overruled.

This is an action on a fire insurance policy issued on plaintiff's buildings and personal property. The property was destroyed by fire on the 28th day of November, 1912. The jury returned a verdict for the plaintiff for $1534.63, and the defendant filed a general motion for a new trial.

The case is stated in the opinion.

*Fred F. Lawrence,* for plaintiff.

*S. W. Gould, Newell & Woodside, and Turner Buswell,* for defendant.

SITTING: SAVAGE, C. J., SPEAR, KING, BIRD, HALEY, HANSON, JJ.

HANSON, J. This is an action on a fire insurance policy issued August 22, 1911, on the plaintiff's buildings and personal property. The property was destroyed by fire on the 28th day of November, 1912. The jury returned a verdict for the plaintiff in the sum of $1534.63, and the case is before the court on the defendant's general motion for a new trial.

At the first trial of this case the presiding Justice ordered a non-suit, and the plaintiff excepted. The exceptions were sustained. The issue in the former trial was "whether the fact that the fire was caused by the operation of a gasoline engine by the plaintiff for threshing grain, in the barn floor, avoided the policy either because it violated the prohibited articles clause or the clause against increase of risk."

Inasmuch as the testimony at both trials is substantially the same, we find nothing in the case at bar to justify a reversal of our opinion as in 113 Maine, 17. But before the second trial the defendant was allowed to file an amendment alleging that "the fire causing the damage in suit was caused through the gross negligence of the plaintiff and his servants and agents in the management of a gasoline engine used on the premises for threshing grain at the time of the fire." In their brief, counsel for the defendant say "the defendant does not base its contention upon the mere definition of the plaintiff's negligence as 'gross negligence,' but upon the conduct of the plaintiff under all the circumstances of the case as tending to show his want of good faith and misconduct." The other issues having been determined in the former case, it remains to consider the question of gross negligence thus raised, as set out in the amendment.

Counsel cite *Davis* v. *Western Home Insurance Company*, 81 Iowa, 496, in support of their claim that the negligence of the plaintiff relieves the defendant from liability. In the policy in that case one of the conditions was, "that said policy shall be void and of no effect if, . . . there be any change in the exposure by the erection or occupation of adjacent buildings, or by any means whatever in the control or knowledge of the assured." A careful reading of the case discloses that the decision turned upon the construction given

to the clause containing the word "exposure," and the court say: "It will be observed that the condition of the policy in question is against 'change in exposure.' The word 'exposure' means 'the state of being exposed,' 'openness to danger; accessibility to anything that may affect, especially detrimentally.' It is a word much used in the business of insurance, in the sense of this definition, to indicate danger of destruction or injury by fire, to property insured, from external sources, and not inherent to the property itself. . . . Exposure from 'the erection or occupation of adjacent buildings' is especially prohibited by specific language. All exposures 'by any means whatever' are forbidden by general language."

Defendant's counsel say, that the use of the gasoline engine was not negligence merely, the doing of a thing carelessly, that he had a right to do, but rather misconduct in that he had no right to place the engine and exhaust so that fire would probably result, and that his act was culpable negligence under the reasoning laid down by Shaw, C. J. in *Chandler* v. *Worcester Mutual Fire Insurance Company,* 3 Cush., 328.

The illustrations used in *Chandler* v. *The Worcester Fire Ins. Co.,* 3 Cush., 328, supra, of the instances where inaction or non-action in the presence of actual danger, with opportunity and ability to control the same, as in the neglect to remove burning coals, or to put out a fire which with the least attention could be extinguished, present situations where the conclusion is irresistible that such neglect amounts in law to constructive intent, and would render a policy void. But no such condition existed here. The plaintiff had used the same machinery several times before, both in and outside of his barn, and no fire had occurred. The machine was equipped for use in and out of buildings. It had been so used in the neighborhood. This fact was well known in the neighborhood, if not known to the company, and it must have had an important bearing upon the issue when presented to the jury, justifying at least the conclusion that the plaintiff had not been guilty of great or gross negligence. The following is the controlling doctrine in this class of cases, and is uniformly accepted as the true one:

"Unless there be in the policy specific limitations, the risk extends to all losses by fire, death or accident, or whatever cause of loss or

injury be insured against, however they be occasioned. May on Insurance, Sec 402. "And where a fire policy expressly excepts certain occasions of fire, all other occasions or causes of fire are included in the risk. "Idem. citing *Insurance Co.* v. *Transp. Co.*, 12 Wall., 194, 197 . . . "Mere carelessness and negligence, however great in degree, of the insured, or his tenants or servants, not amounting to fraud, though the direct cause of the fire, are covered by the policy." Idem. Sec. 408, and cases cited. That writer further says: "One of the principal objects of insurance against fire is to guard against the negligence of servants and others; and therefore while it may be said generally that no one can recover compensation for an injury which is the result of his own negligence or want of care, the contract of insurance is excepted out of the general rule." And that text writer is equally positive in his statement of the rule, "that negligence in a matter as to which the insurers expressly stipulate that they will not assume the risk,— as where ashes are placed by a boy in wooden vessels, the insurers stipulating that they will not assume the risk if ashes are allowed to remain in wood, although the fact was unknown to the insured, and was done without his orders, and contrary to the usual practice,—will work a forfeiture." Idem. Sec. 408, note 3.

The doctrine of the last citation is the same as in *Davis* v. *Insurance Co.*, supra, where there was an express stipulation as to exposure by erection or occupation of adjacent buildings. In *Campbell* v. *Monmouth Mutual Fire Insurance Co.*, 59 Maine, 430, cited by May, 408, supra, there was a condition in the policy that in case of gross negligence on the part of the insured, the policy should be absolutely void. The plaintiff recovered a verdict, and the case came up on exceptions and motion. The defendant complained of the definition of gross negligence given by the presiding Justice. He told the jury that "it is the utter disregard of those precautionary measures which men of ordinary prudence would adopt in such case. . . . It may be that this definition was neither so full nor so accurate as might have been desirable; but we think the plaintiff was more likely to be injured by it than the defendant. The entire omission of those precautionary measures which men of ordinary prudence would adopt in such case, might not constitute gross negligence. Gross negligence is the want of that diligence which even careless men are wont to exercise . . . But it is quite apparent

that the case must have turned here upon the finding as to the actual condition, etc.  .  .  . about which the evidence was conflicting, and not upon any nice definition of what would or would not constitute gross negligence."

Defendant's counsel urges that: "It was the custom in the vicinity where the fire occurred, to thresh grain by the use of a gasoline engine for motive power."  .  .  . "There was no custom to locate the engine in the barn. This engine had been used by plaintiff's son five times previously, twice located in the barn and three times out of doors," and counsel say that "a local custom must be certain, general, frequent and so long continued as to be generally known. It is upheld on the presumption that the parties made the contract with reference to it," and cites *Leach* v. *Perkins*, 17 Maine, 462, as authority for the position. The question whether or not there was a custom as claimed, and its relation to the case if there was such custom, with all other issues of fact, were for the jury. *Bodfish* v. *Fox, et al.*, 23 Maine, 90; *Ulmer* v. *Farnsworth*, 80 Maine, 500; *Noyes* v. *Shepard*, 30 Maine, 173; *Stuart* v. *Machiasport*, 48 Maine, 477; *Eaton* v. *Lancaster*, 79 Maine, 477; *Bouchard* v. *Insurance Company*, 113 Maine, 26, supra; May on Insurance, Sec. 408. *Leach* v. *Perkins*, 17 Maine, 462, supra.

What is gross negligence, and may we say that using a gasoline engine in a barn floor for threshing is gross negligence as matter of law? "Gross negligence" is the synonym for wilful and wanton injury. Words and Phrases, N. S., 792; the intentional failure to perform a manifest duty; *Pratt* v. *Grand Rapids, & I. Ry. Co.*, 171 Mich., 216, Words and Phrases, (N. S.) 792. The term "Gross negligence" signifies wilfulness and involves intent, actual or constructive, which is a characteristic of criminal liability. *Ridout* v. *Winnebago Traction Co.*, 123 Wis., 297, 69 L. R. A., 601, Words and Phrases, (N. S.) Vol. 2, 792. In *Chandler* v. *The Worcester Mutual Fire Insurance Co.*, 3 Cush., 328, supra, the court having under consideration the same question where the trial court excluded evidence tending to show gross negligence, in granting the motion for a new trial said: "Whether the facts relied on to show gross negligence and gross misconduct, of which evidence was offered, would have proved any one of these supposed cases, or any like case, we have no means of knowing; but as they might have done

so, the court are of the opinion, that the proof should have been admitted, and proper instruction given in reference to it."

In *Storer* v. *Gowen,* 18 Maine, 174, the court, in considering the question of negligence raised in the case, say: "How much care will, in a given case, relieve a party from the imputation of gross neglect, or what omission will amount to the charge, is necessarily a question of fact, depending upon a great variety of circumstances, which the law cannot exactly define." It was for the jury to decide the question whether gross negligence was, or was not, proved in this case. *Sawyer* v. *Arnold Shoe Co.,* 90 Maine, 369. See *Raymond* v. *Railroad Co.,* 100 Maine, 529; *Pomroy* v. *Railroad Co.,* 102 Maine, 497; *Palmer* v. *Penobscot Lumbering Association,* 90 Maine, 193.

We are not authorized to say that using a gasoline engine in a barn, for threshing grain, as in this case, is gross negligence as matter of law. The case was tried by able counsel, and in the absence of exceptions we must assume that the charge of the presiding Justice correctly stated the law, as well as the issue. We are not convinced that the jury erred.

The entry will be,

*Motion overruled.*