**James FINNERN, M.D.,**
**Plaintiff, Appellant,**

v.

**SUNDAY RIVER SKIWAY CORPORATION, d/b/a/ Sunday River Ski Resort, Defendant, Appellee.**

No. 92–1625.

United States Court of Appeals, First Circuit.

Heard Oct. 7, 1992.

Decided Jan. 29, 1993.

Richard L. O'Meara with whom Peter L. Murray, Murray, Plumb, & Murray, Portland, ME, Alan E. Richman, John J. Coates, and Breit, Best, Richman, & Bosch, Denver, CO, were on brief, for plaintiff, appellant.

Keith A. Powers with whom Elizabeth A. Olivier, and Preti, Flaherty, Beliveau & Pachios, Portland, ME, were on brief, for defendant, appellee.

Before CYR, Circuit Judge, BOWNES, Senior Circuit Judge, and FUSTE,* District Judge.

FUSTE, District Judge.

Plaintiff, an injured skier, argues that a ski area operator negligently maintained a tree in a particular area of a Maine ski slope and that the ski resort negligently failed to post a warning sign alerting skiers to the presence of a converging trail. Plaintiff alleges that these negligent acts proximately caused him to suffer serious injuries in a skiing accident.

Plaintiff originally brought a five-count negligence action against the ski resort seeking damages. Two of the five counts, loss of consortium and emotional distress brought on behalf of plaintiff's spouse, were voluntarily dismissed. Based on considerations of state law,[1] the district court

---

* Of the District of Puerto Rico, sitting by designation.

1. The Maine legislature enacted the Skiers' and Tramway Passengers' Responsibilities Act, 26 M.R.S.A. § 488 (1991), to limit the liability of Maine's ski area operators. The statute provides that skiers assume risks while skiing on the state's slopes and immunizes ski resorts from legal responsibility for skiing injuries "un-

less the injury or death [is] actually caused by the negligent *operation* or *maintenance* of the ski area by the ski area operator, its agents or employees." *Id.* (emphasis added). Although the statute itself does not define "operation or maintenance," the district court found issues of negligent slope *design* to be outside the scope of the statute's liability limitation exception. *Fin-*

dismissed two more counts alleging negligent tree location or placement and slope arrangement for failure to state a claim on which relief could be granted. Also, the court denied plaintiff's motion to amend the tree placement count in order to allege additional facts. Finally, the district court found the warning-sign count adjudicable; however, finding no material fact was in dispute, the court granted summary judgment—in favor of defendant ski area operator. Plaintiff appeals the district court's dismissals, denial of motion to amend, and summary judgment decision. For reasons explained below, we affirm the district court in all relevant respects.

## I.

## FACTS

James Finnern, M.D.,[2] ("Finnern") and his wife, Denise Finnern, were skiing down an intermediate slope, Dream Maker, at Sunday River Ski Resort[3] ("Sunday River") in Newry, Maine, on March 1, 1989. The Finnerns had previously skied the Dream Maker slope during the three days preceding the accident and had just finished negotiating Dream Maker immediately before the fateful run. Finnern considered his skiing ability at the time to be somewhere between high-intermediate and low-expert levels.

As Finnern descended the slope, he allegedly saw three relatively slow-moving or stopped skiers approximately 100 to 150 feet downslope, who apparently had entered Dream Maker from a converging beginners' trail, Ridge Run. Since, as Finnern claims, he was not apprised of the convergence of Dream Maker and Ridge Run with a sign, and was unaware of the imminence of the converging slope, he was shocked and surprised by the appearance of the Ridge Run skiers. In order not to collide with or startle the slow-moving skiers below him, Finnern made a conscious decision to change course. He successfully avoided the other skiers by at least thirty feet. Finnern, however, while claiming to be in reasonable control of his movements, came upon an ordinary mogul that sent him into the air. The loss of control occasioned by the mogul jump or landing resulted in his losing a ski and, unfortunately, in his crashing into a tree near the periphery of the slope. He came to rest after hitting the tree and gliding a distance down the trail. Finnern sustained severe injuries.

The tree at issue is located near the tree line and boundary of the slope, but is a few feet nearer the trail than the other peripheral trees. Finnern alleges that the proximity of the tree to the edge of the trail proximately caused his accident, and represents an issue of negligent maintenance or operation—actionable under state law. Finnern also claims that the lack of a warning sign was a substantial factor leading to his injuries. Defendant further argues that there was a diagrammatic sign indicating an upcoming convergence.

Defendant ski area operator contends that the tree is not unusually positioned and is like many other trees on the slopes of Maine's many ski areas. Defendant also claims that ski areas are exposed to very limited liability under 26 M.R.S.A. § 488 (1991), and that plaintiff legally assumed certain risks when he decided to go skiing, one of which was collision with a tree.

## II.

## PROCEDURAL HISTORY

The skiing accident led to three separate decisions by the federal district court. Following the voluntary dismissal of the two counts touching on Mrs. Finnern's claims of injury, the district court, on November 5, 1991, dismissed the two tree-related counts. It dismissed on the ground that state law exempted ski resorts from liability based on slope design. However, the court de-

---

*nern v. Sunday River,* Civil No. 91–0065–P–H, slip op. at 3 (D.Me. Nov. 28, 1991).

**2.** Federal jurisdiction is appropriate. Finnern is a resident of Colorado, and Sunday River is a corporation centered and located in Maine, and the amount in controversy exceeds $50,000. Thus, diversity jurisdiction is satisfied. 28 U.S.C. § 1332.

**3.** Also referred to as Sunday River Skiway Corporation.

nied defendant's motion to dismiss the warning-sign count because it raised legitimate, adjudicable issues, namely negligent operation and maintenance of ski slopes under 26 M.R.S.A. § 488 (1991).

The second facet of this appeal stems from the district court's February 14, 1992, denial of plaintiff's motion to amend Count II with additional factual expositions regarding negligent tree location. Plaintiff argues that the new information would have prevented the court from dismissing Count II of the complaint.

The third district court decision on appeal is the April 22, 1992, order granting defendant's motion for summary judgment on the remaining count pertaining to the lack of a convergence warning sign. The court found no issue of material fact in dispute and entered judgment for the ski resort.

We are asked to review these three district court orders but, before addressing each segment of the appeal in turn, we discuss the state law limiting ski resort liability and, in general terms, the rationale behind the assumption of risk doctrine underlying Maine's statute.

## III.

## INHERENT RISKS OF SKIING AND DISMISSAL OF SLOPE DESIGN COUNTS

### A. Risks of Alpine Skiing

Maine, like many other states, has given legislative notice that downhill snow skiing involves significant risk of injury.[4] Despite acknowledged risks, many people find irresistible the danger inherent in the sport of skiing, one of the many human challenges to nature's wrath.

Because skiing is dangerous, and since people enjoy and engage in the sport in spite of the danger, the legislature of the state of Maine, like many others, decided to enact a statute to limit ski area operators' liability and to define the assumption of risk, general responsibilities, duties, and liabilities of skiers and ski resorts generally:

> It is hereby recognized that skiing as a recreational sport and the use of passenger tramways associated therewith may be hazardous to skiers or passengers, regardless of all feasible safety measures which can be taken. Therefore, each skier shall have the sole responsibility for knowing the range of his own ability to negotiate any slope or ski trail, and it shall be the duty of each skier to conduct himself within the limits of his own ability, to maintain control of his speed and course at all times while skiing, to heed all posted warnings, and to refrain from acting in a manner which may cause or contribute to the injury of himself or others. Except as otherwise specifically provided in this subchapter, *each skier* who participates in the sport of skiing shall be deemed to have *assumed the risk of the dangers inherent* in the sport and assumed the legal responsibility for any injury to his person or property arising out of his participation in the sport of skiing, *unless the injury or death was actually caused by the negligent operation or maintenance of the ski area by the ski area operator*, its agents or employees. Except as provided in this section, the responsibility for collisions by any skier while actually skiing, with any person or object, shall be solely that of the skier or skiers involved in collision and not that of the ski area operator. This section shall not prevent the maintenance of an action against a ski area operator for the negligent design, construction, operation or maintenance of a tramway.

4. *See* 26 M.R.S.A. § 488 (1991) (Maine's law regarding skier assumption of risk and ski resort liability limitations). Many states have enacted laws limiting liability of ski area operators, and defining the duties of operators and skiers. *See, e.g.,* Alaska Stat. § 09.17.060, § 09.-65.135 (1992) (relative liability of ski resorts and skiers); Colo.Rev.Stat. § 33–44–109 (1992) (duties of skiers and penalties); Colo.Rev.Stat. § 33–44–112–13 (1992) (limitations on ski area operator liability for inherent dangers of skiing); Conn.Gen.Stat. § 29–212 (1990) (skiers' assumption of risk); Idaho Code § 6–1107 (1992) (limitations of liability of ski area operators); Idaho Code § 6–1109 (1992) (liability of skiers).

Skiers' and Tramway Passengers' Responsibilities, 26 M.R.S.A. § 488 (1991) (emphasis added). An understanding of Maine's statutory effort to limit ski area operator liability in skiing accidents is essential in our review of the district court orders on appeal.

### B. *Dismissal of Two Counts As Design Issues Under Maine Law*

The standard for reviewing a Rule 12(b)(6) dismissal is clear: "[a] complaint is to be construed in the light most favorable to the plaintiff; dismissal is appropriate only if 'it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.'" *Roeder v. Alpha Indus., Inc.*, 814 F.2d 22, 25 (1st Cir.1987) (quoting *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1987)). *See also Miranda v. Ponce Federal Bank*, 948 F.2d 41, 43 (1st Cir.1991); *Feinstein v. Resolution Trust Corp.*, 942 F.2d 34, 37 (1st Cir. 1991); *Correa–Martínez v. Arrillaga–Beléndez*, 903 F.2d 49, 51 (1st Cir.1990); *Dartmouth Review v. Dartmouth College*, 889 F.2d 13, 16 (1st Cir.1989). If a trial court accepts plaintiff's facts and can envision no reasonable application of the law that would entitle plaintiff to relief, the court may rightly dismiss the case. In our review of the district court's dismissal of Counts II and III, we must determine whether the facts supportive to plaintiff, the applicable law, and the interpretation of the law justly support dismissal.

In the case at hand, defendant Sunday River moved in the district court to dismiss all three remaining counts of Finnern's complaint for failure to state a claim. Specifically, Sunday River argued that Counts II and III of the complaint state causes of action for slope design negligence and not for maintenance or operation negligence, a statutorily significant distinction. *See* 26 M.R.S.A. § 488 (1991).

■ Section 488, Maine's statute entitled Skiers' and Tramway Passengers' Responsibilities, greatly limits liability of ski area operators, *excepting only* liability of ski resorts if "the injury or death [is] actually caused by [ ] negligent *operation* or *maintenance* ...." 26 M.R.S.A. § 488 (1991) (emphasis added). The law not only limits ski resorts' liability, but the statute also emphasizes that skiers assume a significant amount of risk in engaging in the inherently risky sport of skiing.[5] Section 488 clearly states that skiers should know their abilities and the ever-present dangers inherent to skiing. *Id.*

The law is clear that a Maine ski area operator like Sunday River may only be held legally liable if its alleged actions or inactions involved negligent operation or maintenance. The district court interpreted this statutory provision to "preclude[ ] any action for negligent design of the slopes and trails of a ski area." *Finnern v. Sunday River*, Civil No. 91–0065–P–H, slip op. at 3 (D.Me. Nov. 28, 1991) (citation omitted). We agree as a matter of law that design questions do not fall within the statutory operation-or-maintenance exception. Our review of the district court's dismissal of Counts II and III, therefore, must focus on whether the facts as seen in the light most favorable to plaintiff support an operation-or-maintenance exception to Maine's bar on liability for ski area operators, or whether the facts as viewed through a plaintiff-friendly lens allege a nonactionable design fault.

■ In regard to Counts II and III, the district court did identify the facts most favorable to plaintiff Finnern. In fact, the trial court accepted the facts as delineated by Finnern's complaint, such as the location of the tree, the confluence of the two slopes, and Finnern's controlled skiing. The district court, however, found unneces-

---

**5.** Assumption of risk is one of the legal terms of art that is relatively self-explanatory. Relevant to this case, Prosser and Keeton note the following on assuming risks: "[T]hose who participate or sit as spectators at sports and amusements may be taken to assume the known risks of being hurt by roller coasters, flying baseballs, hockey pucks, golf balls, wrestlers, or such things as fireworks explosions. Cardozo once summarized all this quite neatly: 'The timorous may stay at home.'" W. Page Keeton et al., *Prosser and Keeton on the Law of Torts* § 68, at 485–86 (5th ed. 1984) (citations omitted).

sary a lengthy discussion of the facts because as a matter of law, the court held that even accepting plaintiff's factual allegations in Counts II and III, "[a]llowing the tree in question to be present within the traveled portion of the Dream Maker trail was obviously a design decision rather than an aspect of operation or maintenance." *Finnern v. Sunday River*, Civil No. 91–0065–P–H, slip op. at 3, 1991 WL 487442 (D.Me. Nov. 5, 1991).

We agree as a matter of law that the tree's position as described by plaintiff's facts, along with the slope's allegedly defective form and angle, are actually averments implicating ski area design, and not operation or maintenance.[6] Examples of negligent operation or maintenance would include placing a snow blower or other machine in a precarious position on a slope without proper warning, or failing to notify skiers that a particular slope had been closed due to poor or dangerous trail conditions. But tree placement along the periphery of slopes, trail direction, curvature, and degree of inclination, as well as myriad other ordinary properties of ski areas, are presumptively design issues. If tree placement or location along the periphery of trails were actionable, ski area operators and skiers themselves might find themselves out in the cold. As a California appeals court observed in a tree collision case:

> The tree itself provided a warning to plaintiff of the implicit danger of a collision with it. A fortiori, [the ski resort] was under no duty to remove it. One

could ask, if there were a duty to remove trees along the edges of ski runs, "which trees?" Such a solution, if followed to its logical conclusion ... would finally lead to cutting down every tree on the mountain.

*Danieley v. Goldmine Ski Assocs.*, 218 Cal.App.3d 111, 122, 266 Cal.Rptr. 749 (1990).

Finding the location of the tree in question and the layout of the surrounding slope to be design issues as a matter of law, we need not reach an assessment of defendant's negligence in implementing those decisions. Sunday River cannot be held liable for such decisions or actions under Maine law.

We affirm the district court's dismissal of Counts II and III for failure to state a claim upon which relief could be granted pursuant to Maine law. 26 M.R.S.A. § 488 (1991).[7]

### C. Denial of Motion to Amend Count II

A party may amend "as a matter of course" in certain circumstances, "[o]therwise a party may amend the party's pleading only by leave of court or by written consent of the adverse party; and leave shall be freely given when justice so requires." Fed.R.Civ.P. 15(a).

■ Our standard for reviewing district court decisions regarding denials of motions to amend is widely known and applied. Unless we find an *abuse of discretion* in a trial court's decision to deny a motion to amend, we defer to the district

---

**6.** We note this case appears to be unlike a recent decision from the same district in which the court denied a motion to dismiss in a context of a set of facts similar to the ones in this case. *See Sánchez v. Sunday River Skiway Corp.*, 802 F.Supp. 539 (D.Me.1992). We compare the two cases without passing any judgment on *Sánchez;* we have only seen the district court opinion and not a page of the trial record.

In *Sánchez,* the ski resort left a tree stump intact thirty feet into the skiing area of a slope. On the motion for dismissal, the district court determined that the relief asked for could conceivably be granted. The motion for dismissal was denied since a legitimate argument could be made, according to the district court, that

maintenance and operation decisions should have caused the stump's removal or marking. In this case, however, *maintenance purposes* have not caused a partial removal of the tree, as may have been the case with the stump scenario in *Sánchez.*

**7.** We recently faced a similar set of issues in *Berniger v. Meadow Green–Wildcat Corp.*, 945 F.2d 4 (1st Cir.1991). In that case, *inter alia,* we upheld the dismissal of a plaintiff's claim for injuries sustained in a collision with a manmade obstruction on the side of a skiing trail. A New Hampshire statute bars suits against ski area operators for "inherent risk" accidents in the sport of skiing. *See* N.H.Rev.Stat.Ann. § 225–A:24.

court's superior ability to weigh the potential amendments against the existing factual record and legal context. The decision to grant or deny a motion to amend pleadings is rightly "left to the broad discretion of the district court." *Coyne v. Somerville,* 972 F.2d 440, 446 (1st Cir.1992). However, "a district court's denial of a chance to amend may constitute an *abuse of discretion* if no sufficient justification appears. *See Foman v. Davis,* 371 U.S. 178, 182, 83 S.Ct. 227, 230, 9 L.Ed.2d 222 (1962)." *Correa–Martinez v. Arrillaga–Beléndez,* 903 F.2d 49, 59 (1st Cir.1990) (citing *Foman v. Davis,* 371 U.S. 178, 182, 83 S.Ct. 227, 230, 9 L.Ed.2d 222 (1962)) (emphasis added).

■ Plaintiff Finnern argues that he should have been able to amend Count II of his complaint to provide additional factual information. Finnern contends that the information may have persuaded the district court that as a matter of law the tree placement issue could reasonably be interpreted as an operation or maintenance problem and therefore was better left for a trial on the merits rather than a court-ordered dismissal.[8] In denying plaintiff's motion to amend, the district court succinctly stated that the "amendments, even if permitted, would not change the [c]ourt's decision to dismiss Count II." *Finnern v. Sunday River,* Civil No. 91–0065–P–H, slip op. at 1 (D.Me. Feb. 14, 1992).

The district court's denial of Finnern's motion indicates that the proposed amendments, in the judgment of the trial court, provided only additional support for the facts and arguments already set forth by the pleadings. In other words, more *design* information about the placement or location of the tree or the form of the slope would still fail to state a colorable claim under section 488 of the Maine law. As we noted in *Correa–Martinez,* 903 F.2d at 59, "[w]here an amendment would be futile or would serve no legitimate purpose, the dis-

trict court should not needlessly prolong matters." After examining the record and relevant law in the case at hand, we find nothing approaching an abuse of discretion on the part of the district court in denying the motion to amend. We affirm the denial of plaintiff's motion to amend Count II.

## IV.

## REVIEW OF THE DISTRICT COURT'S GRANT OF SUMMARY JUDGMENT ON COUNT I

■ Having addressed the appeal of the dismissal of Counts II and III and of the denial of the motion to amend Count II, we lastly review Finnern's appeal of the district court's grant of summary judgment on the warning-sign count in favor of Sunday River. Our review of a district court's grant of summary judgment is plenary. *See Griggs–Ryan v. Smith,* 904 F.2d 112, 115 (1st Cir.1990); *Garside v. Osco Drug, Inc.,* 895 F.2d 46, 48 (1st Cir.1990), *later proceeding Garside v. Osco Drug, Inc.,* 764 F.Supp. 208 (D.Mass.1991), *rev'd, Garside v. Osco Drug, Inc.,* 976 F.2d 77 (1st Cir.1992). However, because of the clarity of the disposition in this case, we need not repeat every detail of the proceedings below, other than the factual and legal findings crucial to a judgment on this segment of Finnern's appeal.

The appropriate standards for granting and reviewing summary judgments are clear. "Summary judgment is appropriate where 'the pleadings, depositions, answer to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.' Fed.R.Civ.P. 56(c); *see also Celotex Corp. v. Catrett,* 477 U.S. 317, 323 [, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265] (1986); *Aponte–Santiago v. López–Rivera,* 957 F.2d 40 (1st Cir.1992)." *Garside v. Osco Drug, Inc.,* 976 F.2d 77, 78 (1st Cir.1992).

---

**8.** Finnern attempted to cure his complaint by alleging that the tree at issue was marked with a blue stripe indicating it was a "land boundary" tree. Finnern suggested that part of the ski resort's land was leased and the other part owned by the resort. If the tree with which Finnern collided had been deliberately left on the slope for the purpose of providing a boundary marker between two distinct tracts of land, Finnern argues the tree's placement was an operations or maintenance concern and not a design matter.

We, like the district court, find no material fact in dispute in regard to Count I. In brief, Finnern claims to have been in control of his skiing on the Dream Maker run. He had sufficient time to consider in a rational manner his options upon seeing slow-moving skiers below him.[9] In fact, he had at least 100 to 150 feet advance notice of the positions of the Ridge Run skiers. He made a considered judgment to ski around them so as not to startle them. Finnern not only succeeded in avoiding the other skiers, but he also did so by at least thirty feet.

As Maine law dictates, other skiers on the slopes of the state's ski areas are an inherent risk assumed by skiers. 26 M.R.S.A. § 488 (1991). With the facts that we consider material to a decision on the warning-sign charge of Count I—even with the facts as presented by Finnern—we agree with the district court's grant of summary judgment for Sunday River. A warning sign would have afforded Finnern no significant additional notice of the presence of the Ridge Run skiers, and Sunday River had no duty to warn Finnern of each and every inherent danger on the slopes.

The appearance of the other skiers on Dream Maker should not have come as a surprise to Finnern. Ski resorts are precisely if not social, recreational areas with many downhill skiers. Maine's liability-limiting statute reflects this fact. We, therefore, cannot envision a judge or jury who could reasonably find that Finnern's accident was a result of, or partially caused by, the lack of a convergence sign on Dream Maker. While it is unfortunate that Finnern's choice of path around the Ridge Run skiers led him to collide with a tree, Sunday River is not legally responsible. We affirm the grant of summary judgment in favor of defendant.

## V.

### CONCLUSION

We agree with the district court that no material fact is in dispute with respect to

Count I, the warning-sign charge. In addition, we believe the district court correctly granted defendant's summary judgment motion as to Count I in favor of defendant Sunday River.

We also find no actionable, negligent behavior on the part of the ski resort in its operation or maintenance of Dream Maker. Plaintiff Finnern did not meet his statutory burden of demonstrating that an action for *maintenance* or *operation* negligence existed as required by relevant law in the state of Maine. With or without the amendments to the complaint, plaintiff makes a slope *design* argument in Counts II and III according to section 488 and reasonable judicial inferences. Ski area operators in Maine are simply not liable for the design of their slopes under state law. We, therefore, *affirm* the district court's decisions.

*So Ordered.*

---

9. The exact position of the Ridge Run skiers is a fact in dispute; however, it is immaterial to our decision here.