STATE OF MAINE  
CUMBERLAND, ss

SUPERIOR COURT  
CIVIL ACTION  
DOCKET NO. CV-17-173

KARROL LEADBETTER,

Plaintiff

v.

FAMILY FUN MANAGEMENT, INC.  
and R.A. MOORE CONSTRUCTION,  
INC.,

Defendants

ORDER ON DEFENDANTS'  
MOTION FOR SUMMARY  
JUDGMENT

Before the court is Defendants Family Fun Management, Inc. and R.A. Moore Construction, Inc.'s motion for summary judgment. For the following reasons, the motion is denied.

FACTS

Defendants own and operate an amusement facility, which conducts snow tubing activities (snow park) in the town of Windham, Maine. (Defs.' Supp'g S.M.F. ¶¶ 1-2.) On January 28, 2017, plaintiff participated in snow tubing at the snow park. (Defs.' Supp'g S.M.F. ¶ 3.) Prior to her participation, plaintiff's husband purchased a ticket for her to use the snow tubing facilities. (Defs.' Supp'g S.M.F. ¶ 6.) Warning signs at the ticket counter inform snow tubers that, under Maine law, they assume the inherent dangers and risks of the sport.[1] (Defs.' Supp'g S.M.F. ¶ 12.)

---

[1] The signs read: **WARNING**, Under Maine law, a Boarder/Tuber assumes the risk of injury to person or property resulting from any of the inherent dangers and risks of boarding/tubing and may not recover from any park area operator for any injury resulting from any of the inherent dangers and risks of boarding/tubing, including, but not limited to: existing and changing snow conditions such as ice, hardpack, powder, packed powder, corn, crust, and slush and cut-up, granular and machine-made snow; surface or subsurface conditions such as dirt, grass, bare spots, rocks, stumps, trees, forest growth or other natural objects and collisions with such natural objects; lift towers, lights, signs, posts, fences, mazes or enclosures, hydrants, water or air pipes, snowmaking and snow-grooming equipment, marked or lit trail maintenance vehicles and snowmobiles, and other man-made structures or objects and their components, and collisions with such man-made objects; variations in steepness or terrain, whether natural or as a result of slope design,

1

The tickets purchased by plaintiff's husband contained a peel-off backing on which was an image of a stop sign next to large bold capital letters stating, "LIABILITY RELEASE PLEASE READ CAREFULLY BEFORE REMOVING THIS BACKING." (Defs.' Supp'g S.M.F. ¶ 9.) Below the bold lettering, the ticket contained language stating: "[b]y removing this peel-off backing and affixing this ticket to your person, you are agreeing to be legally bound to the LIABILITY RELEASE AND COVENANT NOT TO SUE printed on your ticket and on signs adjacent to all ticket outlets." (Defs.' Supp'g S.M.F. ¶ 9.) Below these statements was the same warning displayed at the ticket booths informing tubers that they assume the risk of injuries resulting from the inherent dangers and risks of tubing. (Defs.' Supp'g S.M.F. ¶ 11.) The front of the ticket contained the following statement:

> I hereby accept and assume all risks of any property damage, personal injury or death, which may occur at the park area at which this ticket is used. I hereby COVENANT NOT TO SUE and release Seacoast Snow Park, its employees and agents, from any claims of liability for property damage, personal injury or death resulting from negligence of any kind, condition of the premises, operation of the Park area or actions or omissions of its employees or agents.

(Defs.' Supp'g S.M.F. ¶ 10.)

Plaintiff's ticket was attached to her coat while she was snow tubing. (Defs.' Supp'g S.M.F. ¶ 7.) Plaintiff's husband did not receive a copy of the ticket until after he had paid for it. (Pl.'s Add'l S.M.F. ¶ 22.) Neither plaintiff nor her husband signed any liability release. (Pl.'s Add'l S.M.F. ¶¶ 23-24.) Plaintiff asserts, and defendants dispute, that neither plaintiff nor her husband were aware that the front of the ticket contained release language which differed from the warning language posted at the ticket counters and on the ticket backing. (Pl.'s Add'l S.M.F. ¶¶ 25-26;

---

snowmaking or grooming operations, including but not limited to jumps, roads and catwalks or other terrain modifications; the presence of and collisions with other boarders/tubers; and the failure of boarder/tubers to board/tube safely, in control or within their own abilities. (Defs.' Supp'g S.M.F. ¶ 11.)

2

Def.'s Reply S.M.F. ¶¶ 25-26.)

The snow park consists of a number of parallel snow-covered tracks divided by man-made berms of snow. (Defs.' Supp'g S.M.F. ¶¶ 14-15; Pl.'s Opp. S.M.F. ¶ 15.) At the end of the tracks is a common runout area with a man-made pile of snow, which acts as a retaining wall[2] to slow snow tubers at the end of their runs. (Defs.' Supp'g S.M.F. ¶ 16; Pl.'s Opp. S.M.F. 15.) The snow berms dividing the tubing tracks end prior to the common runout area. (Pl.'s Opp. S.M.F. 15.) Adjacent to the tubing hill is a ravine or embankment. (Pl.'s Add'l S.M.F. ¶ 2; Defs.' Reply S.M.F. ¶ 2.) The embankment is located to the side of the runout area below track 11. (Pl.'s Add'l S.M.F. ¶ 2.) Track 11 was closed during plaintiff's participation in snow tubing. (Pl.'s Add'l S.M.F. ¶ 4.) There was no barrier to prevent tubes sliding down track 10 from entering the runout area below track 11. (Pl.'s Add'l S.M.F. ¶ 11.)

After taking a tubing run down track 10, plaintiff encountered the retaining wall, slid backwards down it and through the runout area into the embankment. (Pl.'s Add'l S.M.F. ¶¶ 9, 16.) Plaintiff was unable to steer or stop her tube from entering the embankment. (Pl.'s Add'l S.M.F. 17.)[3] Plaintiff was injured as a result of sliding outside of the runout area and down the embankment. (Pl.'s Add'l S.M.F. ¶ 1.) The parties dispute whether tubers have little ability to control their speed and direction while sliding down the retaining wall. (Pl.'s Add'l S.M.F. ¶ 15; Defs.' Reply S.M.F. ¶ 15.) The parties also dispute whether there was a protective barrier below track 11 preventing tubes from sliding into the embankment and whether track 11 was closed due

[2] Despite defendants' characterization of the snow berm as a retaining wall in their supporting statement of material facts, defendants deny the existence of any retaining wall in their reply to plaintiff's additional statement of material facts. See (Defs.' Supp'g S.M.F. ¶ 16; Defs.' Reply S.M.F. ¶¶ 12, 14, 16.) Similarly, defendants also dispute the characterization of the snow tubing runs as "tracks" after previously referring to those runs as tracks. See (Defs.' Reply S.M.F. ¶¶ 8-10; Def.'s Supp'g S.M.F. ¶¶ 14-15.)
[3] Defendant denies this statement of fact to the extent that plaintiff labels the embankment a ravine. See (Def.'s Reply S.M.F. ¶ 17; see also Defs.' Reply S.M.F. ¶ 1.)

3

to the hazard presented by the absence of such a barrier. (Pl.'s Add'l S.M.F. ¶¶ 5-6, 11; Defs.' Reply S.M.F. ¶¶ 6, 11.)

PROCEDURE

Plaintiff filed a complaint on April 25, 2017, which she amended on June 8, 2017. In the amended complaint, plaintiff alleges three causes of action: recklessness, negligence, and gross negligence. Defendants filed an answer on June 29, 2017. On October 2, 2017, defendants filed a motion for summary judgement. Plaintiff filed an opposition on October 23, 2017. Defendant's filed a reply on October 31, 2017.

STANDARD OF REVIEW

Summary judgment is appropriate if the record reflects that there is no genuine issue of material fact and the movant is entitled to a judgment as a matter of law. M.R. Civ. P. 56(c). "A material fact is one that can affect the outcome of the case, and there is a genuine issue when there is sufficient evidence for a fact-finder to choose between competing versions of the fact." Lougee Conservancy v. CityMortgage, Inc., 2012 ME 103, ¶ 11, 48 A.3d 774 (quotation omitted).

DISCUSSION

1. Statutory Immunity

Defendants argue that plaintiff's injuries were the result of the inherent dangers and risks of snow tubing and recovery is thus barred by Maine's ski liability statute, 32 M.R.S § 15217 (2017). Plaintiff argues that her injury was not caused by a danger inherent to the sport of snow tubing and that she had not assumed the risk of her injury. Instead, plaintiff argues that her injuries were caused by the negligent operation and maintenance of the snow tubing facility. Defendants argue that plaintiff's injuries were caused by the design of the tubing facility and are thus still protected from liability.

4

Section 15217 protects ski areas from liability for injuries caused by the inherent risks of skiing. See id. § 15217(2)l; see also Merrill v. Sugarloaf Mt. Corp., 1997 ME 180, ¶ 5, 698 A.2d 1042 (interpreting Maine's former ski liability statute, 26 M.R.S.A § 488). Ski areas remain liable for injuries caused by the negligent operation or maintenance of the area. 32 M.R.S. § 15217(8)(A). Injuries caused by the design of the ski area are not actionable. Id. § 15217(6). The definition of "skiing" includes snow tubing. Id. § 15217(1)(B).

### a. Inherent Risk

The inherent risks of skiing are defined as "those dangers or conditions that are an integral part of the sport of skiing." Id. § 15217(1)(A). The legislature has provided a non-exhaustive list of risks which, as a matter of law, are assumed by skiers and tubers. Id. This list includes: natural and man-made variations in steepness or terrain; and collisions with or falls resulting from fences, enclosures, and other man-made objects or structures. Id.

Defendants argue that plaintiff's injuries resulted from a combination of a man-made structure—the retaining wall of snow; a variation in steepness and terrain—the retaining wall and the ravine; and a fence or enclosure. In support of this argument, defendant cites the Law Court's decision in Maddocks v. Whitcomb. In Maddocks, the plaintiff was injured after her snow tube became airborne when it went over a hillock while sliding down the snow tubing chute. Maddocks v. Whitcomb, 2006 ME 47, ¶ 3, 896 A.2d 265. The Law Court held that because the hillock was a man-made object, section 15217(2) barred plaintiff from recovery for her injuries. Id. ¶ 9.

As in Maddocks, section 15217 appears to protect defendants in this case from liability for injuries resulting from the retaining wall. Unlike in Maddocks, however, plaintiff's injuries in this case were caused by a combination of factors. Plaintiff was injured when her tube left the snow-tubing track entirely and slid down an embankment; plaintiff does not allege she was injured by

any variation in the steepness or terrain of the snow tubing run itself. While falls resulting from fences or enclosures are inherent risks of snow tubing, section 15217(1)(A) does not list falls resulting from a lack of fences or enclosures. 32 M.R.S § 15217(1)(A). This court cannot conclude as a matter of law that the dangers of leaving the snow tubing track or of an insufficient protective enclosure are integral to the sport of snow tubing. A genuine issue of material fact exists as to whether all causes of plaintiff's injuries are inherent risks of snow tubing. See Cummings v. Sunday River Ski Way Corp., No. CV-95-10, 1997 Me. Super LEXIS 182, at *8-9 (June 7, 1997) (interpreting Maine's former ski liability statute, 26 M.R.S.A. § 488).

### b. Design; Operation or Maintenance.

Defendants argue that, to the extent plaintiff's injuries did not result from the inherent risks of snow tubing, defendant is protected from liability because those injuries resulted from the design of the tubing facility. Plaintiff argues that her injuries were caused by the negligent operation or maintenance of the snow tubing area, not its design.

Section 15217 grants immunity to ski areas for injuries caused by the design of the ski area. 32 M.R.S. § 15217(6). Ski area design includes trail direction, curvature, and inclination; tree placement on the slopes; and artificial obstacles such as moguls. See Finnern v. Sunday River Skiway Corp., 984 F.2d 530, 535 (1st Cir. 1993) (interpreting 26 M.R.S.A. § 488); Swenson v. Sunday River Skiway Corp, 79 F.3d 204, 206 (1st Cir. 1996) (interpreting 26 M.R.S.A. § 488). Under section 15217, ski areas retain the duty to exercise reasonable care in operating and maintaining the ski area. See 32 M.R.S. § 15217(8)(A). This includes the duty to operate the runout area in a manner which safely stops snow tubers at the end of their snow tubing runs. The purpose of the snow berm at the bottom of the run-out area is to slow the descent of the snow tubers, allowing them to stop safely. Plaintiff asserts and defendants dispute that snow tubers have little

6

ability to control their speed or direction when sliding down the snow berm before coming to a stop. It is undisputed that plaintiff's snow tube slid down the snow berm, left the runout area, and that plaintiff was injured as a result. A genuine issue of material fact thus exists regarding whether defendants exercised reasonable care in their operation of the snow tubing park.

### 2. Release and Waiver

In addition to claiming immunity under the ski statute, defendants argue that by using her snow tubing ticket, plaintiff agreed not to sue defendants and to release defendants from liability for their negligence. Plaintiff makes multiple arguments that the release is invalid, including: (1) it is void against public policy; (2) the release terms on the lift ticket do not reflect a meeting of the minds; (3) the release terms do not clearly and specifically refer to the negligence claims at issue; and (4) to the extent the ticket does create an enforceable release, it does not bar plaintiff's claims for gross negligence and recklessness.

### a. Is the Release Contrary to Public Policy

Plaintiff first argues that the release is invalid because it upsets the balance struck by the legislature in Maine's ski liability statute and, therefore, violates public policy. Defendants argue that nothing in the statute limits the enforceability of prospective releases with ski area operators and that enforcing such releases would be congruent with the statute's purpose to protect ski areas from liability.

Although disfavored, the Law Court has held that contracts releasing parties from liability for their own negligence do not, as a general rule, violate public policy. See Lloyd v. Sugarloaf Mt. Corp., 2003 ME 117, ¶ 10, 833 A.2d 1; Hardy v. St. Clair, 1999 ME 142, ¶ 3, 739 A.2d 368 (overruled on other grounds by Brown v. Equip. Corp., 2008 ME 186, 960 A.2d 1188). In Lloyd, the Law Court held that a release of liability signed by a participant in a bike race was not void as

7

against public policy. Lloyd, 2003 ME 117, ¶¶ 11-12, 833 A.2d 1. The Law Court elucidated five factors that courts consider when determining whether recreational releases of liability are void as against public policy.[4] Id. ¶ 11. The Court reasoned that, based on the record, it was "hard pressed . . . to conclude that provision of [the bike race] is a public service or that its entrants were under any compulsion to sign the release;" therefore, the release was not contrary to public policy Id. ¶ 12.

Lloyd did not involve any statute affecting the parties' respective liability for injuries sustained in the particular recreational activity. Similarly, no statutory duty was applicable to the recreational activity at issue in any of the cases cited by the Lloyd court to support the proposition that recreational releases of liability are not contrary to public policy. See Barnes v. New Hampshire Karting Ass'n, 128 N.H. 102, 509 A.2d 151 (kart racing); Schutkowski v. Carey, 725 P.2d 1057, 1060 (Wyo. 1986) (skydiving); Jones v. Dressel, 623 P.2d 370, 375, 377 (Colo. 1981) (although the plaintiff argued that federal regulations governing air travel precluded enforcement of the release, the Colorado Supreme Court held the regulations, by their express terms, were not applicable to the skydiving activities at issue).

In this case, plaintiff does not argue that the release of liability is void as against public policy based on any of the factors examined in Lloyd. Instead, plaintiff argues that the release is contrary to the intent of the legislature and therefore violates public policy. In Maine, "[a] contract is unenforceable as violating public policy . . . only if it violates a well-defined and dominant policy that may be ascertained from the law and legal precedent." State Farm Mut. Auto. Ins. Co.

---

[4] The Lloyd court stated the factors courts generally consider are whether "the activity is a public service or open to the public; the facility invites persons of every skill level to participate; the facility has the expertise and opportunity to control hazards and guard against negligence; the facility is in a better position to ensure against risks; and broad releases of liability would remove incentives for the facility to manage risks, thereby requiring the public generally to bear the costs." Lloyd, 2003 ME 117, ¶ 11, 833 A.2d 1.

8

v. Koshy, 2010 ME 44, ¶ 42, 995 A.2d 651.

Section 15217 places responsibility for injuries caused by the inherent risks of skiing on the skier. 32 M.R.S. 15217(2). Ski areas expressly remain liable for injuries caused by the negligent operation or maintenance of the ski area. Id. §15217(8)(a). The statute thus expresses an intent to limit a ski area's liability only for those injuries caused by the inherent risks of the sport. A ski area's own negligence is not an inherent risk of the sport. Dalury v. S-K-I, Ltd., 670 A.2d 795, 800 (Vt. 1995). Enforcement of the liability release in this case would contravene the intent of the legislature; the release is therefore void as against public policy. See Dalury, 164 A.2d at 800; Phillips v. Monarch Recreation Corp., 668 P.2d 982, 987 (Colo. App. 1983); but see Brigance v. Vail Summit Resorts, Inc., 2018 U.S. App. LEXIS 397 at * *41-43 (10th Cir.) (declining to follow Phillips and holding that Colorado's Ski Safety Act does not express a policy against exculpatory agreements).

b. Existence of a Contract.

Contractual exclusions of negligence liability are disfavored and courts will strictly construe a purported release of liability against the party seeking immunity. Doyle v. Bowdoin Coll., 403 A.2d 1206, 1207 (Me. 1979). In order to release a party from liability for its own negligence a contract "must expressly spell out with the greatest particularity the intention of the parties contractually to extinguish negligence liability." Id. at 1208 (quotations marks omitted). The Law Court has indicated that it must be beyond doubt that a plaintiff intended to grant a defending party immunity from liability for the defending party's own negligence. Id. (quoting Employers Liability Assurance Corp. v. Greenville Business Men's Association, 423 Pa. 288, 224 A.2d 620, 623 (1966)).

The existence of a contract and the intent of the parties in entering into the contract are

9

questions of fact. Sullivan v. Porter, 2004 ME 134, ¶ 13, 861 A.2d 625; Seashore Performing Arts Ctr. v. Town of Old Orchard Beach, 676 A.2d 482, 484 (Me. 1996). To establish a contract, the parties must mutually assent to be bound by all the material terms of the contract. Sullivan, 2004 ME 134, ¶13, 861 A.2d 625. Assent may be either express or implied. Id.

In this case, plaintiff asserts that neither she nor her husband were aware that the lift ticket contained the release language. Both plaintiff and defendant agree that plaintiff's husband, and not plaintiff, purchased the lift ticket and that neither plaintiff nor her husband signed any liability release. Despite the existence of signs at ticket kiosks warning customers of the risks skiers assume, there is no evidence before the court that plaintiff or her husband had actual notice of the release language prior to purchasing their tickets. Similarly, although the parties agree that the ticket was attached to plaintiff's jacket, there is no evidence before the court regarding whether plaintiff peeled off the ticket backing and affixed the ticket to her jacket. Plaintiff has raised a genuine issue of material fact regarding whether a contract exists that includes the terms of the release.

### c. Specificity of the Release Terms

Plaintiff argues that the release language does not clearly express an intent to release defendants from liability for the negligent operation and maintenance of the snow park because the peel-off backing on the ticket contains a warning that tubers accept the inherent risks of skiing. Plaintiff argues that the language could thus be construed to release defendants only from liability for injuries caused by the inherent risks of snow tubing. Defendants argue that the release language was prominent and conspicuous, and that plaintiff could have sought clarification as to the terms of the release.

In order to release a party from liability for its own negligence, a contract "must expressly

10

spell out with the greatest particularity the intention of the parties contractually to extinguish negligence liability." Doyle, 403 A.2d at 1208 (quotations marks omitted). Such contracts will be strictly construed against the party who seeks immunity from liability. Id. The purported release must, on its face, clearly and unequivocally reflect the parties' mutual intent. Emery Waterhouse Co. v. Lea, 467 A.2d 986, 993 (Me. 1983).

The liability release language on the ticket backing states:

**LIABILITY RELEASE**
**PLEASE READ CAREFULLY**
**BEFORE REMOVING THIS BACKING**

By removing this peel-off backing and affixing this ticket to your person, you are agreeing to be legally bound to the LIABILITY RELEASE AND COVENANT NOT TO π
SUE printed on your ticket and on signs adjacent to all ticket outlets.

**WARNING**: Under Maine law, a Boarder/Tuber assumes the risk of any injury to person or property resulting from any of the inherent dangers and risks of boarding/tubing and may not recover from any park area operator for any injury resulting from any of the inherent dangers and risks of boarding/tubing, including, but not limited to . . . .

It is undisputed that when plaintiff's husband purchased the tickets, there were signs at the ticket counters warning customers that tubers assume the risk of injuries resulting from the inherent risks of tubing. There is no evidence that there were signs informing customers that by purchasing a ticket they were agreeing to release defendants for injuries resulting from the negligent operation or maintenance of the snow park. Through the reference on the ticket backing to the signs located at the ticket counter, a customer could infer that the ticket backing reflects an intent to release defendants from liability only for those injuries resulting from the inherent risks of the sport. Further, the language on the ticket backing refers to the liability release printed on "this ticket" and does not specify the liability release language printed on the front of the ticket. Accordingly, the liability release on the ticket may refer to the warning printed below the "LIABILITY

11

RELEASE PLEASE READ CAREFULLY" statement. Strictly construed against defendants, the language on the ticket is not sufficiently specific regarding the scope and effect of the release. See Rowan v. Vail Holdings, Inc., 31 F. Supp. 2d 889, 899 (D. Colo. 1998) (holding that a purported release was ambiguous due to a conflict between the release language and a ski safety act providing that skiers assume the risks inherent in the sport). The release does not clearly and unequivocally reflect plaintiff's intent to release defendants from liability for injuries resulting from defendants' negligent operation or maintenance of the snow park.

### d. Plaintiff's Claims for Gross Negligence and Recklessness

Plaintiff argues that even if the ticket releases defendants from liability for negligence, it does not bar her claims for gross negligence and recklessness. Defendant argues that Maine does not recognize the tort of gross negligence and that plaintiff has not presented any evidence supporting her gross negligence claim. Defendant does not argue the release is enforceable as to plaintiff's claims for recklessness.

In Maine, "there are no degrees of care and no degrees of negligence." Beaulieu v. Beaulieu, 265 A.2d 610, 612 (Me. 1970); see also Reliance Nat'l Indemn. v. Knowles Indus Servs., Corp., 2005 ME 29, ¶ 17, 868 A.2d 220. The concept of "gross negligence" is a "synonym for willful and wanton injury" and has been described as the "equivalent of wanton or reckless misconduct." Bouchard v. Dirigo Fire Ins. Co., 114 Me. 361, 365, 96 A. 244, 246 (1916); Blanchard v. Bass, 153 Me 354, 361, 139 A.2d 359, 363 (1958). The Law Court has indicated in dicta that exculpatory agreements are not enforceable to relieve a party from liability for its gross negligence or willful and wanton misconduct. Reliance Nat'l Indemn., 2005 ME 29, ¶ 15, 868 A.2d 220; Lloyd, 2003 ME 117, ¶ 21, 833 A.2d 1 (Calkins, J., dissenting); see also Restatement (Second) of Contracts § 195(1) (1981).

12

In this case plaintiff has raised an issue of material fact regarding the park manager's awareness of the hazard posed by the absence of a barrier in the runout area and defendants' operation of the park despite this danger. Defendants argue that their precautionary measures in closing track 11 and creating retaining walls show that they did not willfully ignore any risk posed by the tubing facilities. Whether defendants' conduct amounted to willful and wanton behavior is a question of fact for the jury. See Robles v. City of Chicago, 10 N.E.3d 236, 240 (Ill. App. Ct. 2014). Plaintiff has raised a genuine issue of material fact regarding whether defendants' conduct was willful and wanton. "Willful and wanton misconduct generally renders exculpatory provisions void." See Reliance Nat'l Indemn., 2005 ME 29, ¶ 15, 868 A.2d 220.

The entry is

> Defendants Family Fun Management, Inc. and R.A. Moore Construction Inc.'s Motion for Summary Judgment is DENIED.

Date: February 6, 2018

Nancy Mills
Justice, Superior Court

13