**Sandra J. GURSKI, Walter Gurski, and Jane Gurski, Plaintiffs,**

v.

**WYETH–AYERST DIVISION OF AMERICAN HOME PRODUCTS CORPORATION, Defendant.**

Civil Action No. 94–30145–MAP.

United States District Court, D. Massachusetts.

Jan. 3, 1997.

Michael O. Shea, Begley & Ferriter; John J. Ferriter, and William E. Begley Lyon, Ferriter & Fitzpatrick, Holyoke, MA, for Plaintiffs.

Charles K. Bergin, Jr., Robinson, Donovan, Madden & Barry, Springfield, MA, for Defendant.

Joseph L. Kociubes and Melissa M. Thompson, Bingham, Dana & Gould, Boston, MA, for Objector.

PONSOR, District Judge.

This Report and Recommendation is hereby adopted and the motion for summary judgment is DENIED. The clerk will set the matter for a status conference.

So ordered.

*AMENDED REPORT AND RECOMMENDATION REGARDING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT*

(Docket No. 32)

December 2, 1996

NEIMAN, United States Magistrate Judge.

### I. INTRODUCTION

Wyeth–Ayerst Division of American Home Products Corp. ("Defendant") has moved for summary judgment on the three count complaint brought by Sandra J. Gurski ("Ms. Gurski") and her parents (collectively "Plaintiffs"). Pursuant to Rule 3 of the Rules of the United States Magistrates in the United States District Court for the District of Massachusetts, the motion for summary judgment has been referred to this Court for a report and recommendation. 28 U.S.C. § 636(b)(1)(B). For the reasons set forth below, the Court recommends that Defendant's motion be denied.

### II. BACKGROUND

This case concerns Ms. Gurski's use of Triphasil 21, an oral contraceptive manufactured by Defendant. The facts are stated in a light most favorable to Plaintiffs, the parties opposing summary judgment. See *CMM Cable Rep, Inc. v. Ocean Coast Properties, Inc.,* 97 F.3d 1504, 1508 (1st Cir.1996).

Ms. Gurski was born in 1963 and, at all relevant times, has lived with, and been financially dependent upon, her parents. She began seeing her gynecologist, Dr. John P. Sorrentino ("Dr. Sorrentino"), in 1982 when she was nineteen years old. At an annual appointment in December of 1987, Ms. Gurski complained to Dr. Sorrentino of severe cramping and heavy bleeding associated with her menstrual period. Dr. Sorrentino prescribed Ovcon–35, an oral contraceptive. Ovcon–35 is not manufactured by Defendant.

At her annual exam in November of 1988, Dr. Sorrentino renewed Ms. Gurski's Ovcon–35 prescription and told her to return in one year. By this time, Ms. Gurski was sexually active and was using the drug for birth control purposes. In May of 1989, however, Ms. Gurski stopped taking Ovcon–35 because it was making her nauseous. In December of 1989, Dr. Sorrentino once again renewed Ms. Gurski's prescription for Ovcon–35. As before, Ms. Gurski discontinued taking the drug several months later (in April of 1990) because of nausea.

On December 28, 1990, Ms. Gurski again visited Dr. Sorrentino for an annual exam. This time, upon Ms. Gurski's request for an oral contraceptive that would make her less nauseous than Ovcon–35, Dr. Sorrentino gave Ms. Gurski some samples of Defendant's product, Triphasil 21. When the samples ran out in March of 1991, Ms. Gurski filled a prescription for a month's worth of Triphasil 21. Every month thereafter, until June of 1991, she purchased Triphasil 21 from the pharmacy. Notwithstanding Defendant's claims to the contrary, Ms. Gurski asserts that Dr. Sorrentino never had any discussion with her about the risks associated with using Triphasil 21, only that she was assured that there would be no problems in using oral contraceptives.

On June 26, 1991, Ms. Gurski went to the Mercy Hospital in Springfield, Massachusetts, with severe abdominal pain. After an initial analysis, she was airlifted to Hartford Hospital where she underwent surgery for a ruptured hepatic adenoma (benign liver tumor). To control the hemorrhaging, a right hepatectomy was performed which resulted in the removal of sixty percent of her liver. On July 23, 1991, Ms. Gurski was released from the hospital only to be readmitted the next day due to an abscess around her liver.

She was ultimately released on August 11, 1991 and to this day suffers permanent injuries.

Both the Ovcon–35 and the Triphasil 21 prescribed by Dr. Sorrentino contained package inserts detailing prescription information, patient labelling and warning material. With reference to Triphasil 21, there were apparently two inserts included during the relevant time period. The first patient insert was current from May 25, 1990, through January 21, 1991. At the end of a long paragraph entitled "Formation of tumors," and after reciting studies linking oral contraceptives to uterine and breast cancer, it stated in pertinent part as follows:

> Oral contraceptives do cause, although rarely, a benign (nonmalignant) tumor of the liver. These tumors do not spread, but they may rupture and cause internal bleeding, which may be fatal. A few cases of cancer of the liver have been reported in women using oral contraceptives, but it is not yet known whether the drug caused them.

Appendix to Defendant's Motion, Exhibit A to Exhibit D. The second patient insert, although it revised the first insert in April of 1990, took effect on January 21, 1991. Directly under the heading, "Liver tumors," it stated:

1. During the same time frame, there were also two versions of the physician's pamphlet, provided to physicians by Defendant, outlining the side effects of Triphasil 21. Between May 25, 1990 and January 21, 1991, the physician's pamphlet contained the following pertinent language:

> Hepatic Tumors.
> Benign hepatic adenomas have been found to be associated with the use of oral contraceptives. One study showed that oral contraceptive formulations with high hormonal potency were associated with a higher risk than lower potency formulations. Although benign, hepatic adenomas may rupture and may cause death through intra-abdominal hemorrhage. This has been reported in short-term as well as long-term users of oral contraceptives. Two studies relate risk with duration of use of the contraceptive, the risk being much greater after 4 or more years of oral contraceptive use. While hepatic adenoma is a rare lesion, it should be considered in women presenting abdominal pain and tenderness, abdominal mass or shock. A few cases of hepatocellular carcinoma have been reported in women taking oral contraceptives. The relationship of these

In rare cases, oral contraceptives can cause benign but dangerous liver tumors. These benign liver tumors can rupture and cause fatal internal bleeding. In addition, a possible but not definite association has been found with the pill and liver cancers in two studies in which a few women who developed these very rare cancers were found to have used oral contraceptives for long periods. However, liver cancers are extremely rare. The chance of developing liver cancer from using the pill is thus even rarer.

Id. At oral argument, counsel for both parties acknowledged that it is unclear from the record which insert Ms. Gurski received and when.[1]

## III. STANDARD OF REVIEW

The role of summary judgment in civil litigation is to pierce the boilerplate of the pleadings and assay the parties' proof in an effort to determine whether trial is actually required. *McIntosh v. Antonino*, 71 F.3d 29, 33 (1st Cir.1995) (citing *Wynne v. Tufts Univ. Sch. of Med.*, 976 F.2d 791, 794 (1st Cir.1992), *cert. denied*, 507 U.S. 1030, 113 S.Ct. 1845, 123 L.Ed.2d 470 (1993)). The Court must view the evidence as a whole, rather than in isolation. *Mesnick v. General Elec. Co.*, 950 F.2d 816, 822 (1st Cir.1991),

drugs to this type of malignancy is not known at this time.
Id. (footnotes omitted). Between January 21, 1991 and July 29, 1991, the physician's pamphlet read, in applicable part, as follows:
> Hepatic Neoplasia.
> Benign hepatic adenomas are associated with oral-contraceptive use, although the incidence of benign tumors is rare in the United States. Indirect calculations have estimated the attributable risk to be in the range of 3.3 cases/100,000 for users, a risk that increases after four or more years of use. Rupture of rare, benign, hepatic adenomas may cause death through intra-abdominal hemorrhage.
> Studies from Britain have shown an increased risk of developing hepatocellular carcinoma in long-term ([greater than] 8 years) oral-contraceptive users. However, these cancers are extremely rare in the U.S. and the attributable risk (the excess incidence) of liver cancers in oral-contraceptive users approaches less than one per million users.
Id. The later pamphlet also reiterated the "Liver Tumors" statement contained in the second patient insert.

*cert. denied,* 504 U.S. 985, 112 S.Ct. 2965, 119 L.Ed.2d 586 (1992). The facts, and all reasonable inferences that may be drawn from them, must be viewed in the light most favorable to the non-moving party, see *Guzman–Rivera v. Rivera–Cruz,* 29 F.3d 3, 4 (1st Cir.1994), who bears the burden of placing at least one material fact into dispute after the moving party shows the absence of any disputed material fact, *Mendes v. Medtronic, Inc.,* 18 F.3d 13, 15 (1st Cir.1994) (discussing *Celotex Corp. v. Catrett,* 477 U.S. 317, 325, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986)).

At bottom, summary judgment is appropriate where the record reveals no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). Summary judgment is not appropriate, however, if the target of the motion is able to affirmatively point to specific facts that demonstrate the existence of an authentic dispute, at least with respect to the issues on which the target bears the ultimate burden of proof. See *Garside v. Osco Drug, Inc.,* 895 F.2d 46, 48 (1st Cir.1990).

### IV. ARGUMENTS

The sole issue before this Court is whether Ms. Gurski is entitled to maintain a cause of action under Count I of the complaint for Defendant's alleged failure to warn.[2] In analyzing this issue, the Court looks to the Massachusetts implied warranty theory which "is 'congruent in nearly all respects with the principles expressed in Restatement (Second) of Torts § 402A (1965).'" *Knowlton v. Deseret Medical, Inc.,* 930 F.2d 116, 119–20 (1st Cir.1991) (quoting *Back v. Wickes Corp.,* 375 Mass. 633, 378 N.E.2d 964, 969 (1978)).

### 1. Duty to warn

In order to survive summary judgment in a failure to warn case, a plaintiff must first raise a triable issue as to duty. See *Kotler v. American Tobacco Co.,* 926 F.2d 1217, 1233 (1st Cir.1990), *vacated on other grounds,* 505 U.S. 1215, 112 S.Ct. 3019, 120 L.Ed.2d 891 (1992). Under Massachusetts law, a product may be considered unreasonably dangerous, if the manufacturer fails to warn of non-obvious risks associated with the normal use of the product about which the manufacturer knows or should have known. See *Garside v. Osco Drug, Inc.,* 976 F.2d 77, 79–81 (1st Cir.1992). Such warnings typically go directly to the consumer of the product. *Id.* at 79. However, where the product is a prescription drug requiring the oversight of a learned intermediary (a physician), "it is widely accepted that the manufacturer's duty to warn runs to the physician rather than the patient," *Id.* (citing cases).

In 1985, the Massachusetts Supreme Judicial Court ("SJC") carved out an exception to the prescription drug rule in the case of oral contraceptives. See *MacDonald v. Ortho Pharmaceutical Corp.,* 394 Mass. 131, 475 N.E.2d 65, 70, *cert. denied,* 474 U.S. 920, 106 S.Ct. 250, 88 L.Ed.2d 258 (1985). In *MacDonald,* the SJC decided that oral contraceptives require direct warnings to patient consumers because, unlike most prescription drugs involving substantial risks: (1) a patient usually takes an active role in the decision to choose oral contraceptives; (2) direct warnings by the manufacturer to the consumer are feasible; and (3) doctor-patient contact is limited—i.e., oral contraceptives are generally prescribed for a full year without any interim appointments. See *id.* 475 N.E.2d at 69–70. Cf. *Lukaszewicz v. Ortho Pharmaceutical Corp.,* 510 F.Supp. 961 (recognizing departure from prescription drug rule in the case of oral contraceptives where plaintiff can show that defendant deviated from Food and Drug Administration

---

**2.** Although Count I also alleges, among other theories, that Defendant negligently *manufactured* Triphasil 21, Plaintiffs acknowledged at oral argument that the only viable claim under Count I is that Defendant failed to provide an adequate warning. Similarly, Defendant acknowledged at oral argument that, given Ms. Gurski's alleged dependence on her parents, there is no independent basis for granting summary judgment on Counts II and III—loss of consortium claims brought by Ms. Gurski's parents apparently pursuant to M.G.L. ch. 231 § 85x. Compare *Monahan v. Town of Methuen,* 408 Mass. 381, 558 N.E.2d 951, 957 (1990) (granting summary judgment on parents' loss of consortium claims where undisputed facts indicated child was not financially dependent on them). Of course, Counts II and III must be dismissed if summary judgment is granted in Defendant's favor on Count I.

("FDA") regulations), *amended on other grounds,* 532 F.Supp. 211 (E.D.Wisc.1981).

In this case, resolution of the duty issue at summary judgment is quite simple. Ms. Gurski has alleged triable issues that she falls within the *MacDonald* exception to the prescription drug rule—e.g., she claims that at some point prior to her injury she took an oral contraceptive, Triphasil 21, manufactured by Defendant. Thus, at least at this stage of the proceedings, it appears that, unlike the typical prescription drug case where the manufacturer has a duty to warn only the prescribing physician, Defendant had a duty to adequately warn Ms. Gurski directly of the risks associated with using its product.

Before leaving the duty issue, however, the Court finds it necessary to address Defendant's bid to limit *MacDonald* to cases where the patient is prescribed the oral contraceptives for *birth control purposes* only. In contrast and with reference to the present matter, Defendant notes that, when Ms. Gurski began taking Ovcon–35, she was doing so solely for *therapeutic reasons,* i.e., to relieve the cramping and bleeding associated with her menstrual period, not as a method of birth control. In such cases, Defendant argues, the duty to warn runs to physicians only, not patients, as is generally true with other prescription drugs. *MacDonald* itself does not directly address the difference.

At first blush, it appears that, in the proper circumstance, Defendant's argument might carry some legal weight. Thus, *MacDonald* does distinguish the typical "healthy, young consumer of oral contraceptives [who] is usually actively involved in the decision to use [them], as opposed to other available

birth control products," from the patient who uses other prescription drugs solely "to treat a malady." *Id.,* 475 N.E.2d at 69. Accordingly, the factors which caused the Supreme Judicial Court in *MacDonald* to carve out an exception to the prescription drug rule may not apply when the oral contraceptive is prescribed for non birth control purposes.[3]

There are, certainly, countervailing considerations. As examples, a physician, when considering what information to share with a patient, may rely on the availability of package inserts in oral contraceptives, regardless of their intended use, and a patient's involvement in the decision-making process concerning the use of oral contraceptives may be as great when they are used for purposes other than contraception. Moreover, there may be a duality to the use, as here, which might blur any legal distinction. Indeed, the second patient insert specifically mentions other health benefits from the use of oral contraceptives, including the regulation of menstrual cycles.

It is unnecessary, however, to make such fine distinctions at this stage of the proceedings. For present purposes, it can fairly be assumed that, although Ms. Gurski began using Ovcon–35 for therapeutic reasons, as of the fall of 1988 she sought and used Ovcon–35, and later Triphasil 21, for birth control purposes. As Ms. Gurski indicated,

medical treatment was not my sole purpose in obtaining oral contraceptives from Dr. Sorrentino between 1987 and 1991.... Commencing in the fall of 1988, I became sexually active and used the oral contraceptives as a form of birth control. From the fall of 1988 to June 1991, the oral contraceptive prescriptions I received from

---

**3.** See also *Odgers v. Ortho Pharmaceutical Corp.,* 609 F.Supp. 867, 877 (E.D.Mich.1985), in which this very question was pondered:

Defendant's statement that it is not possible to refer to "ordinary" prescription drugs on the one hand and oral contraceptives on the other ignores the fact that there are many differences in the way oral contraceptives and other prescription drugs are treated by both patients and physicians, not to mention the FDA. The law is accustomed to making distinctions based on such factual differences; it should not be that difficult to determine how an oral contraceptive was used in a particular situa-

tion and then apply the rule of law accordingly. While the imposition of a duty to warn the user of an oral contraceptive may in fact create a situation where the manufacturer's warnings also reach persons using the oral contraceptive for therapeutic purposes, on balance I am satisfied that the interference with the physician-patient relationship in these situations is of less danger than the absence of direct user warnings in the circumstances of this case.

The court then noted that it need not answer the question, its inquiry being limited to the factual dispute before it. *Id.* at 877 n. 20.

Dr. Sorrentino were prescribed and used by me as a form of birth control.

Plaintiffs' Opposition, Exhibit 1 (Sandra J. Gurski Affidavit), ¶¶ 1, 2. While these assertions may be challenged at trial and the parties poised to revisit the legal issue, there is nothing at this time which convinces the Court that Defendant did *not* owe a duty to warn Ms. Gurski directly of the risks associated with its product.

### 2. Adequacy of the warning

Having determined for purposes here that Defendant had a duty to warn Ms. Gurski directly, the Court turns to the adequacy of the warning itself. An adequate warning is one that is "reasonable under the circumstances," *Brochu v. Ortho Pharmaceutical Corp.*, 642 F.2d 652, 657 (1st Cir.1981) (citations omitted)—i.e., one that conveys to the consumer, at the very least, "reasonable notice of the nature, gravity, and likelihood of known or knowable side effects," *MacDonald*, 475 N.E.2d at 70. Although a court can find that a particular warning is adequate as a matter of law, adequacy "is almost always an issue to be resolved by a jury." *Id.* at 71. Indeed, "few questions are 'more appropriately left to a common sense lay judgment than that of whether a warning gets its message across to an average person.'" *Id.* (quoting *Ferebee v. Chevron Chem. Co.*, 552 F.Supp. 1293, 1304 (D.D.C. 1982), *aff'd*, 736 F.2d 1529 (D.C.Cir.), *cert. denied*, 469 U.S. 1062, 105 S.Ct. 545, 83 L.Ed.2d 432 (1984)). See also *Knowlton*, 930 F.2d at 120; *Laaperi v. Sears, Roebuck & Co., Inc.*, 787 F.2d 726, 731–732 (1st Cir. 1986).

In the present case, Defendant makes essentially three arguments why its patient inserts must be considered adequate as a matter of law. First, Defendant argues that its warnings were legally adequate because they were in compliance with regulations of the FDA. As Defendant apparently recognizes, however, such compliance is not dispositive, it is simply evidence going to a warning's adequacy. See *MacDonald*, 475 N.E.2d at 70–71 (citing cases).

Second, citing *McEwen v. Ortho Pharmaceutical Corp.*, 270 Or. 375, 528 P.2d 522 (1974), Defendant asserts that Plaintiff has not met her burden of introducing expert evidence as to the warnings' inadequacies. This argument is inapposite. *McEwen* focused, in Defendant's words, on warnings "directed to the medical expert," not, as here, warnings flowing directly to the patient. See also *Lareau v. Page*, 840 F.Supp. 920, 932–33 (D.Mass.1993) (similar), *aff'd*, 39 F.3d 384 (1st Cir.1994). Moreover, plaintiffs often proceed to a jury on inadequate warning claims without expert testimony. As the First Circuit indicated in *Knowlton*, 930 F.2d at 121, "[t]he jury did not need the help of an expert to explain or formulate a warning."

■ Third, Defendant contends that the Court should find its warnings adequate as a matter of law because both warn of precisely the injury which Ms. Gurski suffered. Similarly, Defendant contends that the warnings must be considered legally adequate because Plaintiff has adduced no facts to the contrary for the jury to dispute. However, content is not the sole criterion in determining the adequacy of a warning; the jury may also consider a warning's expression of the facts and the method or form in which it was conveyed. *Brochu*, 642 F.2d at 657; see also *MacDonald*, 475 N.E.2d at 71. Thus, a warning may be found to be unreasonable if it was unduly delayed, reluctant in tone or lacking a sense of urgency. *Id.* at 71 (citing *Seley v. G.D. Searle & Co.*, 67 Ohio St.2d 192, 423 N.E.2d 831 (1981)).

[2] Although it is close call, this Court is of the opinion that a reasonable jury could find that both the old and new warnings lacked a sense of urgency. Here, Plaintiffs argue with enough merit to defeat summary judgment that the old warning not only down-played any danger—by pointing out that potential liver tumors would be "benign" and "nonmalignant" and would "not spread,"—but was located at the end of a long paragraph generally entitled "Formation of Tumors." As to the new warning, Plaintiffs argue, again adequately for purposes here, that a jury could deem the amended warning unduly delayed since it was not distributed until approximately nine months after it was revised and, like the old

warning, used language such as "benign" and "extremely rare."

Finally, Plaintiffs maintain, neither warning was as detailed as the physician's pamphlets, a factor which may lead a reasonable jury to conclude that the warnings failed to express the true gravity or likelihood of harm. For example, while the physician's pamphlet characterizes the risk of benign liver tumors as 3.3 in 100,000, the patient inserts variously describe the risk as "rare," "very rare" and "extremely rare." In addition, the inserts, unlike the physician's pamphlet, do not explain that this risk has been reported in "short-term use." It may well be that these distinctions will prove insufficient to convince a jury of the inadequacy of the warning, but the question is factually laden enough that the warning's adequacy, at least for the moment, should go to a jury.

### 3. Read and Heed

■ Since Ms. Gurski has raised a triable issue on the adequacy of Defendant's warnings, "a rebuttable presumption arises that [she] would have [read and] heeded an adequate warning." *Garside,* 976 F.2d at 81. See also Restatement (Second) of Torts, § 402A, comment j; *Knowlton,* 930 F.2d at 123. Defendant attempts to rebut the presumption by claiming that Ms. Gurski's deposition testimony indicated that she did not read the insert. For purposes here, this argument must fail.

Although Ms. Gurski acknowledges that she "didn't read the entire [package insert] word for word," she also stated, "I'm sure I glanced at it." Defendant's Motion, Exhibit A at 28. She later avowed, in an effort at clarification, "[w]hen I stated 'I glanced at it,' I meant that I quickly read the insert. I remember reading the warnings." Plaintiffs' Opposition, Exhibit A at ¶ 3. Granted, when a party has given clear answers to unambiguous deposition questions, she cannot raise an issue of disputed fact by submitting a subsequent affidavit that contradicts the deposition testimony. See *Colantuoni v. Alfred Calcagni & Sons, Inc.,* 44 F.3d 1, 4–5 (1st Cir.1994); *Darnell v. Target Stores,* 16 F.3d 174, 176 (7th Cir.1994); but see *Kennedy v. Allied Mut. Ins. Co.,* 952 F.2d 262, 266–67 (9th Cir.1991) (limiting rule to instances where

there is a clear "sham"). Here, however, even if the subsequent clarification has contradictory aspects, the original deposition testimony raises a factual dispute which is genuine and material enough. In sum, viewing the facts most favorably to Ms. Gurski, there is nothing yet to indicate that the presumption that she would have read and heeded an adequate warning has been rebutted.

### 4. Final Comment

■ As a final matter, Defendant asserts that its expert will challenge Plaintiffs' claim that Triphasil 21—rather than Ovcon–35 or some combination of the two drugs—caused Ms. Gurski's injuries. Defendant's expert will apparently say that benign liver tumors associated with ingestion of oral contraceptives are strongly associated with "long exposure times" so that it is most likely that more than six months of ingestion was required for Ms. Gurski to have suffered the injuries alleged. Defendant also notes that Ms. Gurski's own expert opines that her condition was the result of "birth control pills," not specifically Triphasil 21.

On the other hand, the physician's pamphlet for Triphasil 21 in place in December of 1990, see *supra* at n. 1, indicates that "short-term" users, like those who use the drug on a long-term basis, may develop the type of tumor suffered here. In addition, Defendant's expert indicates that liver tumors have been reported in women who have used oral contraceptives "for as short a time as 4 months," although he does go on to note that "whether short exposure could have a causal effect is questionable." Defendant's Motion, Exhibit E (citation and internal quotation marks omitted).

Certainly, a plaintiff in a products liability action must show that the injury is attributable to the defendant's negligence, *Smith v. Ariens Co.,* 375 Mass. 620, 377 N.E.2d 954, 958 (1978), and since the SJC does not recognize market share liability, Plaintiffs here must be able to identify Defendant as the cause of their injuries, *Payton v. Abbott Labs,* 386 Mass. 540, 437 N.E.2d 171 (1982); see also *Santiago v. Sherwin Williams Co.,* 3 F.3d 546, 551 (1st Cir.1993) (indicating that

imposing market share liability would "not be consistent with the SJC's admonition that wrongdoers be held liable only for the harm they have caused").[4] While Defendant's claims may bear fruit at trial, the Court finds for purposes here that there is also a genuine and material issue as to whether Triphasil 21, which was used for six months at most, was responsible for Ms. Gurski's injuries.

## V. CONCLUSION

For the foregoing reasons, the Court recommends that Defendant's motion for summary judgment be DENIED.[5]

**4.** Although, at this time Plaintiffs have not alleged any theory of market share liability, they had sought to amend their complaint to include the manufacturer of Ovcon–35. District Court Judge Michael A. Ponsor denied that request pending the outcome of Defendant's motion for summary judgment.

**5.** The parties are advised that under the provisions of Rule 3(b) of the Rules for United States Magistrates in the United States District Court for the District of Massachusetts, any party who objects to these findings and recommendations must file a written objection with the Clerk of this Court within ten (10) days of the party's receipt of this Report and Recommendation. The written objection must specifically identify the portion of the proposed findings or recommendations to which objection is made and the basis for such objection. The parties are further advised that failure to comply with this rule shall preclude further appellate review by the Court of Appeals of the District Court order entered pursuant to this Report and Recommendation. See *Keating v. Secretary of Health & Human Services,* 848 F.2d 271, 275 (1st Cir.1988); *United States v. Valencia–Copete,* 792 F.2d 4, 6 (1st Cir.1986); *Park Motor Mart, Inc. v. Ford Motor Co.,* 616 F.2d 603, 604 (1st Cir.1980); *United States v. Vega,* 678 F.2d 376, 378–79 (1st Cir.1982); and *Scott v. Schweiker,* 702 F.2d 13, 14 (1st Cir.1983). See also *Thomas v. Arn,* 474 U.S. 140, 154–55, 106 S.Ct. 466, 474–75, 88 L.Ed.2d 435 (1985). A party may respond to another party's objections within ten (10) days after being served with a copy thereof.